Hitohcook, J.
The original bill in this case was filed in the name of Jarvis Kemp and Daniel Buckey, against John Walker, and Elizabeth, his wife, to foreclose a mortgage, and was filed on May 12,1842. The mortgage, which is made a part of the bill, purports to convey lot No. *11, in the town of Tiffin, in Seneca county, to complainants, as security for the payment of a note of $1,856.24, and hears date June 5, 1837. This deed appears to have been regularly executed by John Walker and wife, and was recorded on the 15th day of the same month.
In May, 1842, John Walker filed his petition in the district court of the United States, for the district of Ohio, for the benefit of-the bankrupt law. and such proceedings were had, that, on the 24th day of October of the same year, he received a certificate, discharging him from the debts owing by him at the time of filing the petition. Lewis Davis, the assignee in bankruptcy of Walker, of *101 fered at public sale, the interest of said Walker in said lot No. 11, and the same was purchased by one Luther A. Hall, for himself and Joseph Walker.
On November 9, 1843, the complainants filed an amended bill, setting forth a mistake in the original bill, in the name of one of the complainants—the name of Jarvis Kemp having boon inserted instead of Lewis Kemp—and by this amended bill, the said Lewis Davis and Luther A. Hall wore made additional defendants. The prayer was the same as in the original bill, that the mortgaged premises might be sold for the payment of the mortgage debt.
In February, 1844, this bill was answered by the defendants, Walker, Hall, and Davis. Walker admitted his indebtedness to complainants, and the execution of the mortgage, but insisted that the same had not been delivered, and was therefore inoperative. He stated further, that as collateral security for said indebtedness, he had transferred to complainants a note against Joseph Walker for 81,000, which had boon collected by complainants. That this transfer was made under an agreement of complainants, to assist him by furnishing him with merchandise with which to carry on business.- That the complainants had refused to comply with this agreement, and therefore were not entitled to the benefit of this 81,000.
^Tho defendants, Hall and Davis, insisted, in their answers, that at the time of the execution of the mortgage, Walker was in failing circumstances; that the mortgage was made without the knowledge of the complainants, and with the intent to defraud creditors, and was therefore void. They further insisted that the mortgage was never in fact delivered to the mortgagees, and was therefore inoperative.
During the pendency of the suit in the court of common pleas, the mortgaged premises were sold under an interlocutory decree of that court, and for a sum much less than that due upon the mortgage.
In this state of the case, two questions are presented for the consideration of the court: first, was the mortgage in controversy executed for the purpose of defrauding creditors, and therefore void ? and second, was the same instrument void for want of delivery?
1. Was the mortgage made for the purpose of defrauding creditors ?
There can be no doubt, from the testimony in the case, that at *102 tbe time of the execution of this instrument, John Walker was very much embarrassed in his circumstances, and hoplessly insolvent. It was not in his power to pay his debts. _ It is equally certain that he was at the same timo justly indebted to the complainants, and that this mortgage was executed to secure the payment of that indebtedness, in part or in whole. It presents the common case of the preference of one of many creditors by a debtor. It was not a conveyance made in trust for the use of a creditor’, and made in contemplation of insolvency, which, under the statute, would inure to the benefit of all tbe creditors, but a conveyance to the creditor himself, and under such circumstances, can not be considered fraudulent and void.
2. Is the deed void for want of delivery?
It is undoubtedly true that no interest can bo taken under a deed- until the same is delivered. It is the delivery which gives the instrument force and effect. What will ^amount to, or be construed as a delivery, is sometimes a question of difficulty. But in this case there is no difficulty on this account. The facts are these: The complainants are residents of the State of Maryland. The deed was executed on June 5, 1837, and not delivered to the grantees; but on the 15th day of the same month, delivered to the recorder of the county for record. If the deed had remained in the recorder’s office until the time of tbe filing of this bill, and had there been intervening liens created by contract or judgment, there might perhaps have been some question as to the sufficiency of this delivery. But the proofs show that in May or June of the year 1838, John Walker, the mortgagor, went with Komp, one of the mortgagees, to the office of the recorder of the county, and directed the record or to deliver the deed to Komp, which was accordingly done. Here, then, was an actual delivery to the mortgagee himself, and from this time the deed must take effect, whether it would have taken effect from the delivery to the recorder or not. Having been once recorded, it was not necessary that it should be recorded again.
It is clear, in the opinion of the court, that the complainants are entitled to have their debt satisfied, so far as it can be done from fho avails of the mortgaged premises.
It would seem that here should have been an end of this ease. But the complainants, on June 29, 1844, filed what is called a second amended bill. This amendment is in the form of a creditor’s *103 bill, seeking to obtain satisfaction of whatever balance may be found due to complainants, from the credits of the defendant, Walker, after exhausting the mortgage security. It is based upon the assumption that the certificate in bankruptcy of Walker was fraudulently procured. Several new defendants are made, most or all of whom have answered, and testimony has been taken. It does not seem to the court that this matter is properly brought forward in the manner in which it is presented. It is the proper subject for an original bill, rather than for an amendment to an original bill seeking to foreclose *a mortgage. We have, however, looked into the evidence, and have not been able to discover the fraud of which complaint is made.
Upon the whole case, the complainants are entitled to a decree, as before stated, to have the fund derived from the mortgaged premises appropriated toward the payment of their debt, the cost accruing upon the original and first amended bill, up to the time of the decree in the court of common pleas, first having been paid from said fund. The costs in the court of common pleas upon the second amended bill, and all the costs in this court, must be paid by the complainants.