Scott, J.
This suit was commenced in June, 1863, by Samuel Robinson, since deceased (and whose executor now represents him), against his son, Samuel H. Robinson.
The purpose of the suit, as shown by the petition, is to enforce a trust, subject to which it is alleged that the defendant holds the legal title to certain lots and real estate in the town of Greenville, which were, to a large extent, paid for from means originally furnished by the plaintiff, for the purpose of being invested in the name of his son, the defendant, but for his own benefit. The defendant by answer, among other matters of defense, alleges that the trust sought to be enforced was created for the sole purpose of defrauding the creditors of the plaintiff; and he sets up this fact as a bar to the relief sought by the plaintiff. This allegation was traversed by reply; and the cause having been brought, by appeal, into the district court, and coming on there for hearing at the *April term, 1864, it was, “ by consent and agreement of parties, referred to J. T. Janvier, Esq., as referee, to try the cause and to report his conclusions of fact and of law separately, together with the evidence heard before him reduced to writing.”
A great deal of evidence was taken before the referee under this *444 •order, from ■which it appears that, prior to 1846, the plaintiff had failed in mercantile business, had become unable to pay his debts, and that in that year a portion of his real estate was sold at judicial •sale, at the suit of creditors, and was purchased by one William Wilson, under an agreement with the plaintiff that he might continue in possession of the premises, sell so much of them as would ■enable him to reimburse Wilson for the purchase money paid by ■him, and retain the residue for his own benefit. Subsequently, in 1853, Wilson’s claim having been satisfied, or nearly so, he conveyed the premises to the defendant at the instance and request of the plaintiff — the defendant paying no consideration therefor, and the sole object of the arrangement being to secure the property for the benefit of the plaintiff against the claims of his creditors.
Some other real estate, under a similar arrangement, was conveyed by one Wood to the defendant at the request of the plaintiff, ■and for the same purpose.
The whole of this property was afterward sold by the defendant, with the consent of the plaintiff, and. the proceeds, together with, additionsl means furnished by the plaintiff, and $158.40 of the de fendant’s money, were invested in the purchase of property in Union City, costing $1,200, the title being taken in the name of ■the son on account of the father’s embarrassed circumstances. The defendant afterward, in 1855, traded this Union City property for the lots in Greenville, which are now in controversy.
The referee states in his report, that “ nothing could be more satisfactorily established than that no consideration passed from the defendant for the lands conveyed to him by Wilson and Wood; and it seems equally clear thatthe object in procuring thetitle to be made to him was to protect the property from the creditors of the plaintiff.” *This finding of fact is, we think, clearly warranted by the evidence accompanying the report. But the referee further found from the evidence that the lands conveyed to the defendant were, in part, incumbered by an inchoate right of dower of a former wife of the plaintiff, upon which creditors could have no claim, and that the plaintiff enhanced the value of the premises by procuring the release of this right of dower when the premises were sold and conveyed ; and he further found that a portion of the funds furnished by the plaintiff in part payment for the Union City property was the proceeds of “ suspended claims ” collected by the plaintiff from debtors whose circumstances were such as to render the claims *445 worthless to his creditors. Upon these facts he found the law and' equity of the case with the plaintiff, and finding that defendant used and appropriated in the purchase of the Greenville property the sum of $1,041.60 of the plaintiff’s money, he held that said sum should be a lien on said property in favor of plaintiff.
The case comes before us by reservation, on exceptions filed to this report. The defendant excepts on the ground that the finding of the referee is against the law of the case; that the purpose of the parties in the creation and continuance of the trust having been to defraud creditors, the plaintiff can not recover any part of the moneys invested for such fraudulent purpose in the name of the defendant; and he therefore asks that the plaintiff’s petition be dismissed. And we think this motion must prevail, upon the facts found by the referee, and which were properly so found from the evidence.
The creation of the trust sought to be enforced was a fraud upon creditors. It was so intended by both the parties to the transaction. The plaintiff, in order to secure his property against the claims of his creditors, procured a conveyance of it to be made to the defendant, without any valuable consideration, and the defendant accepted the conveyance, upon a secret trust, for the plaintiff’s-use. To the proceeds arising from the subsequent sale of this property, the plaintiff afterward added other funds, and the whole was invested in other real estate purchased in the name of the defend- • ant, to secure it from creditors. It can make no difference, in the *eye of the law, that these additional funds were obtained by the plaintiff, in part, by the liberality of his wife, now deceased, or as the result of his own prudent management in the collection or-settlement of doubtful debts. If the means thus invested were the absolute property of the plaintiff, no matter how acquired, his creditors had a right to require their application to the payment of* their just claimB. And the plaintiff’s case rests upon the fact that the means thus invested were, in fact, his. The defendant is, apparently, guilty of bad faith and gross dishonesty in refusing to account for the property and funds thus received from his father. But public policy will not permit courts to aid a party in reaping the fruits of an arrangement or contract made to defraud creditors. The decision in the case of Trimble v. Doty, 16 Ohio St. 118, is decisive of this case. In all such cases, the familiar maxim, “ ex turpi causa, non oritur aqtio,” is fatal to any relief sought by either of the *446 parties to the fraud. Had this action been brought for the benefit •of creditors, by the executor who now represents the original plaintiff, the case would be very different.
The exceptions of the defendant to the report of the referee must be sustained, and the plaintiff’s petition dismissed.
Day, C. J., and White, Welch, and Brinkerhoee, JJ., concurred.