Minshall, J.
We are unable to see how, as against his creditors, the transaction by which F. C. Trebein with his wife, his daughter, his son-in-law and his brother-in-law,0 formed “The F. C. Trebein Company” and then conveyed to it every vestige of property he had not before conveyed, either to his wife or to his daughter, can be sus *324 tained, against the justice of their demand to have the property so transferred administered for the benefit of all his creditors under the insolvent laws of this state. He was at the time liable in a large sum of money on indorsements he had made for the accommodation of the Straw Paper Company of which he was a member and one of its directors. He knew it was about to fail and that he would have to respond to these indorsements. This fact induced the conveyances he had before made to his wife and to his daughter, whether for a valid consideration or not, was not considered by the court for the reasons stated in its finding, that there were suits then pending to set them aside. The capital of The F. C. Trebein Company was fixed at $60,000, divided into 600 shares of $100 each, Trebein taking 596 of the shares and each of the other persons named taking one share. It was formed on January 22, 1895, Trebein being made the president, treasurer and general manager, and conveyed to the company the property in question, estimated to be worth $60,000 and received therefor the shares above stated, and at once placed all of them, except one, in pursuance of his original purpose, with three of the banks who held his indorsements of the paper of the Straw Paper Company, for the purpose of securing them on his indorsements ; and be continued in the control and management of the milling and grain business as he had before the corporation was formed and the conveyance made. The court found that this was all done in good faith. But, in view of the facts, we are unable to see how the court could have meant more than that he meant no wrong by it. Good faith in law, however, is not to be measured always by a man’s own standard of right, but by that which it *325 has adopted and prescribed as a standard for the observance of all men in their dealings with each other. When one conveys all his property to another with the intention of hindering and delaying his creditors, or a part of them, in pursuing their legal remedies against him and his property, his conduct in law is deemed fraudulent however honestly he may have intended to deal with all his creditors, in the future. Trimble v. Doty, 16 Ohio St., 118. The good faith of a party under such circumstances must be determined by the legal effect of what he deliberately does. Brinkerhoff v. Tracy, 55 Ohio St., 558; Lee v. Hennick, 52 Ohio St., 177; Gashe v. Young, 51 Ohio St., 376, 389. The formation of the corporation and the conveyance to it by Trebein of all the property he then had, necessarily hindered and delayed all his creditors in the pursuit of their claims against him. The formation of the corporation in no way facilitated the transaction of his milling business and that connected with it. Nothing was added to his capital, unless we regard the few hundred dollars that may have been paid for the four shares of stock taken by the other members of his family, such an addition. Evidently an addition to capital was not the controling object. The transaction cannot be likened to a conveyance to a third person for a valuable consideration — considered in the light of the facts, it was no more than a conveyance from himself to himself. The corporation was in substance another F. C. Trebein. His identity as owner of the property was no more changed by his conveyance to the company than it would have been by taking off one coat and putting on another. He was as much the substantial owner of the property after the conveyance as before; and *326 had substantially the same use of it as if the conveyance had not been made. The only purpose the creation of the corpoxation and the conveyance to it subserved, was to hinder creditors in levying upon the property and selling it on execution at law; and it is this hinderance the law will not permit, and, when ascertained in a proper proceeding, requires the conveyance to be set aside and the property administered for the benefit of all the creditors of the fraudulent grantor.
It is suggested that the px-operty may be levied on. This is true, but it cannot be sold on execution until the conveyance is set asid.e; for it is not the policy of the law to sell a law suit. It is also suggested that the stock of Trebein may be reached by a proceeding provided by statute. This is true, but it is not the simple proceeding of an execution at law; besides few persons, at this day, would care to take stock in a manufacturing or any similar company, with its statutory liability attached, as a substitute for tangible px-operty.
The fiction by which an ideal legal entity is attributed to a duly formed incorporated company, existing separate and apart from the individuals composing it, is of such general utility and application, as frequently to induce the belief that it must be universal, and -be, in all cases adhered to, although the greatest frauds may thereby be perpetrated under the fiction as a shield. But modern cases, sustained by the best text writers, confine the fiction to the purposes for which it was adopted— convenience in the transaction of business and in suing and being sued in its corporate name, and the continuance of its rights and liabilities, un- ■ affected by changes in its corporate members; and have repudiated it in all cases where it has been in *327 sisted on as a protection to fraud or any other illegal transaction. Thus in Brundred v. Rice, 49 Ohio St., 640, where an incorporation had been formed for the purpose of giving effect to an illegal agreement between it and a railroad company for a discrimination in freig’hts between it and other shippers, the fiction was disregarded, and a recovery allowed against the promoters by one who had been thus discriminated against, in like manner as if the corporation had no existence. See also the following citations: Morawetz on Corporations, sections 1 and 227; Railway Co. v. Miller, 51 N. W., 981; Gas Company v. West, 50 Iowa, 16; Booth v. Bunce, 33 N. Y., 139; State ex rel. Atty. Gen. v. Standard Oil Co., 49 Ohio St., 137; Bennett v. Minott, 28 Oregon, 339, 348.
A like attempt has frequently been made of late to use this fiction in connection with a conveyance to the legal entity, as a means of defrauding- creditors; but seems to have uniformly failed.
In Montgomery Web Co. v. Dienelt, 133 Pa. St., 585, which was a suit by a creditor of one company to set aside a conveyance by it to another, as in fraud of his rights, it appeared that the latter was formed substantially by the stockholders of the former, who relinquished their stock in it for stock in the latter; this being substantially all the consideration given by the purchasing company. This was held to be a fraud on the creditors of the former company, called the Aronia. The case does not differ in principle from the one before us. Here the conveyance was by an individual, and in consideration of stock taken in the corporation formed. The judge, delivering the opinion, said: “Is the Montgomery Company so completely a new and different company from the Aronia Company *328 that the law must close its eyes to the fact that the difference is a mere jungle of names? We do not think there is any compulsion to such legal blindness. Settled general principles, and the analogies of the law, are against such a contention. If the corporation had merely changed its name, there could have been no doubt of the continued liability of the property. ” As to the creditors of the old company who had taken stock for their claims in the new one, they were held bound to know the nature of the transaction, and that the property conveyed could be followed by the creditors of the old company for the satisfaction of their claims. The Hibernia Ins. Co. v. Transportation Co., 13 Fed. Rep., 516, is a case of like character and was decided in the same way. In Bennett v. Minott, 28 Oregon, 337, a case quite similar to the one before us, in all its facts, the court held that: “When a debtor, for the purpose of hindering and delaying creditors, organizes a corporation and transfers to it all his assets, he himself being the owner of practically all the corporate stock, and continuing the business the same after as before the incorporation, using the proceeds for his own benefit, equity will set aside such transfer at the instance of creditors, notwithstanding the incorporation is valid, and the corporate stock subscribed by the debtor is subject to sale under execution. Under such circumstances a court of equity will look beyond the legal forms, and decide the case on the rights of the parties.” Terhune v. Savings Bank, 45 N. J. Eq., 344, is another case, where an insolvent debtor, with the members of his family, formed a corporation, a manufacturing company, and conveyed to it his property, real and personal, much as in the ease under review. The convey *329 anee was set aside, at the suit of a creditor. It was there said that in conveying his property to the corporation so formed, he simply “changed his habiliments. ’ ’ The fiction in regard to a corporation being a legal entity was not allowed to avail him. And Kellogg v. Douglas County Bank, 58 Kan., 43, is a recent case of similar character. It was there held, that, “A fraud may be perpetrated by an insolvent merchant through the instrumentality of a corporation organized and controlled by himself, to which he transfers the bulk of his property, as well as by a transfer to an individual; and where it appears that this has been done for the purpose of hindering and delaying’ creditors and enabling the debtor to retain the management and control of his property, and of depriving his creditors of an opportunity to collect their dues, and when such insolvent retains substantially all the stock in the corporation, and no innocent person contributes any substantial sum to its assets, the court in sustaining attachments levied on the property, and directing the sale thereof to satisfy the claims of creditors, is warranted in treating the whole transaction as a sham.”
We are so clearly satisfied that the conveyance by Trebein of his property to the corporation, was made to hinder and delay creditors, and should have been so declared by the court, and ordei'ed administered for the benefit of all his creditors under the provisions of section 6344, Revised Statutes, that we think it unnecessary to consider whether, upon the facts, it did not also constitute an assigment in trhst, in contemplation of insolvency, to secure one or more creditors, within the meaning of section 6343, Revised Statutes, and, for *330 such reason, should • be ordered administered as before stated.
There is no doubt that an insolvent debtor when he acts in good faith may prefer one or more of his creditors. Cross v. Carstens, 49 Ohio St., 548. But the way in which this may be done has been very clearly defined. He may pay any of his creditors in money, or may convey property in satisfaction of his claim, or may give him a mortgage on property to secure it. But he must deal simply with the creditor preferred, and the latter must deal with an eye single to himself; and when property is conveyed it must be no more than a fair satisfaction of the debt. Jamison v. McNally, 21 Ohio St., 295. If the conveyance or mortgage is to secure others than the particular creditor to whom the property was conveyed or mortgaged, and was made in contemplation of insolvency, it becomes in law an assignment within the meaning of section 6343, Revised Statutes, and inures to the benefit of all the creditors of the grantor. Pendery v. Allen, 50 Ohio St., 121; Cashe v. Young, 51 id., 376. If thei'efore we regard a corporation capable of taking such an assignment, and holding the property for the benefit of one or more creditors of the assignor, it would seem to follow that, in this ease, the conveyance of Trebein to The F. C. Trebein Co., must be regarded as an assignment in trust for the creditors with whom he placed the most of his stock as “a general security” to their claims against him; and therefore, under the section just referred to, may be held to be an assignment for the benefit of all his creditors. The primary object was, as stated by the attorney who conducted the matter, to give security to the three banks; and the plan of a corporation was adopted *331 in preference to a mortgage, that Trebein might remain in control of the business, and make money enough to pay their claims. Hence if this be true, the corporation took the legal title in trust for the benefit of these three creditors and the grantor; and the ease would, in principle, differ but little, if any, from that of Loudenbach v. Foster, 39 Ohio St., 203. The law of Hoffman v. Mackall, 5 Ohio St., 124 and Conkling v. Coonrod, 6 Ohio St., 611, may be regarded as abrogated by the act regulating assignments for the benefit of creditors adopted in 1859, and carried into the revision of 1880. By this law all conveyances in trust for creditors are, by sections 6335-36, required to be administered in the probate court, irrespective of fraud; and all conveyances, transfers and assignments made to hinder, delay or defraud creditors, when set aside at the suit of any creditor; and all' assignments in contemplation of insolvency in trust to prefer one or more creditors are declared to be for the equal benefit of all creditors and are required to be administered in the same court.
The decision, however, is placed on the ground that the conveyance by Trebein to the company was fraudulent as to his other creditors, and should be set aside, and the property administered for the benefit of all his creditors.

The judgment is reversed, and cause remanded to the court of common pleas for further proceedings under section 6344, Revised Statutes.