Court of Common Pleas for Cuyahoga County.

THE WESTPORT LAND CO. v. REALTY BOARD INVESTORS, INC., ET AL.

Decided July 31, 1930.

KRAMER, J.

On or about June 3rd, 1930, the case of *Brueggemann et al* v. *The Realty Board Investors, Inc. et al.* was filed- in this court. The amended petition in that case contained four causes of action.

The first set up certain promissory notes; the second, a mortgage securing the same. A third cause of action set up another mortgage securing different notes, and alleged that the assets of the Realty Board Investors, Inc. were frozen, that the company was unable to go forward with its business, that this situation was leading to a race of diligence between creditors, and a consequent sacrifice of the assets. The fourth cause of action set up a conveyance made by the defendant Realty Board Investors, Inc., to a subsidiary corporation of all of its assets, the effect of which is alleged to be to hinder and delay the creditors of the defendant company. The prayer of the petition is for a money judgment, foreclosure of the mortgages, marshalling of liens, and the appointment of a receiver.

On June 3rd, upon application of the plaintiff and upon the allegations contained in the petition, a general receiver was appointed by the court for the defendant company.

The Realty Board Investors, Inc., was engaged in the business of allotting, dealing in and selling real estate. Prior to the institution of this suit it had transferred all its assets to a subsidiary corporation, known as the Board Investors Company. All of the capital stock of the Board Investors Company was held by the Realty Board Investors, Inc. At the time of the filing of this action there was pending in this Court three separate foreclosure actions against the Realty Board Investors, Inc., covering three separate parcels of property, owned and upon which mortgages had been given by the said company. The case is now before the court upon a motion or motions filed by the receiver to stay the proceedings in these foreclosure cases.

In support of such motion the receiver contends that the plaintiffs in the Brueggemann action by asking for a receiver have submitted their mortgages to the administra-

tion of the receivership estate, and that the other mortgagees should come into the receivership suit upon equal terms, if an orderly judicial administration of the estate is to be had, that their separate actions should be stayed and that they should be permitted or required to file their cross-petitions in the receivership case so that all the actions might proceed together. It is claimed that otherwise the estate will be administered piece-meal and the benefits of the receivership lost; that all parties should submit themselves to the jurisdiction of this Court in the same case on an equal footing with each other, all sharing equitably in the benefits and bearing fairly the burdens of the receivership, according to their respective liens and priority.

The motions are opposed upon two grounds:

First: That the Court had no right to appoint a general receiver in this action.

Second: That if it had such right, it should, nevertheless, refuse to grant the application of the receiver herein made.

In support of the first proposition it is claimed that the petition sets up only,—1st, an ordinary claim for the foreclosure of a mortgage upon real estate; 2nd, an equitable claim of a contract creditor for the appointment of a receiver; 3rd, the setting aside of a fraudulent conveyance.

The argument is made that it is the law that the right of the Court to appoint a receiver flows from Section 11894 of the Ohio statutes, and that a receiver may be appointed only upon one of the grounds enumerated in that statute; that the plaintiffs herein are simply contract creditors of the defendant, and that therefor the power of the court was limited to the appointment of a receiver only for the property upon which the mortgage of the plaintiffs rested. Citing: *Hoiles* v. *Watkins,* 117 Ohio St., 165; *Harkin* v. *Brundage,* 276 U. S., 36, at page 72; *Scott* v. *Farmers Loan & Trust Co.,* 69 Fed., 17, at page 20.

That the Court cannot appoint a general receiver upon the petition of a simple contract creditor before judgment

is undoubtedly the law, and that such is the law is not contested by the plaintiffs herein.

The right of the Court to appoint this general receiver rests upon the allegations of the fourth cause of action of plaintiff's petition, alleging a fraudulent conveyance of the assets of the defendant company. The opponents of this motion contend that the conveyance herein being to a subsidiary corporation of the grantor, and such grantor owning all of the capital stock of the subsidiary company to which the conveyance was made, did not constitute a fraudulent conveyance within the meaning of General Code Section 11104-5-6.

This question appears to be determined by the holding of the Supreme Court in the case of *Bank* v. *Crebbin*, 59 Ohio St., 316. The facts in that case are the same as in the case at bar, with the exception that the debtor had placed all of the capital stock of the grantee corporation except one share with certain of his creditors as collateral security for their claims. The opinion of the court, however, appears to give no importance to that fact, but holds the conveyance of the property as fraudulent without regard to what was done with the capital stock. The opinion of the Court beginning on page 325 is applicable in its entirety to the instant case, and in the opinion of the Court is decisive of the question.

The Court says:

"When one conveys all his property to another with the intention of hindering and delaying his creditors, or a part of them, in pursuing their legal remedies against him and his property, his conduct in law is deemed fraudulent however honestly he may have intended to deal with all his creditors in the future. *Trimble* v. *Doty,* 16 Ohio St., 118. The good faith of a party under such circumstances must be determined by the legal effect of what he deliberately does. *Brinkerhoff* v. *Tracy,* 55 Ohio St., 376, 389. The formation of the corporation and the conveyance to it by Trebein of all the property he then had, necessarily hindered and delayed all his creditors in the pursuit of their claims against him. The formation of the corporation in no way facilitated the transaction of his milling business and that connected with it. Nothing was added to his

capital, unless we regard the few hundred dollars that may have been paid for the four shares of stock taken by the other members of his family as such an addition. Evidently an addition to capital was not the controlling object. The transaction cannot be likened to a conveyance to a third person for a valuable consideration—considered in the light of the facts, it was no more than a conveyance from himself to himself. The corporation was in substance another F. C. Trebein. His identity as owner of the property was no more changed by his conveyance to the company than it would have been by taking off one coat and putting on another. He was as much the substantial owner of the property after the conveyance as before; and had substantially the same use of it as if the conveyance had not been made. The only purpose the creation of the corporation and the conveyance to it subserved, was to hinder creditors in levying upon the property and selling it on execution at law; and it is this hinderance the law will not permit, and, when ascertained in a proper proceeding, requires the conveyance to be set aside and the property administered for the benefit of all the creditors of the fraudulent grantor.

It is suggested that the property may be levied on. This is true, but it cannot be sold on execution until the conveyance is set aside; for it is not the policy of the law to sell a law suit. It is also suggested that the stock of Trebein may be reached by a proceeding provided by statute. This is true, but it is not the simple proceeding of an execution at law; besides few persons, at this day, would care to take stock in a manufacturing or any similar company, with its statutory liability attached, as a substitute for tangible property."

The Court is therefore of the opinion and holds that the general receiver in this case was properly appointed.

The question then is whether the Court in the exercise of its discretion should grant the motion of the receiver to stay the foreclosure proceedings of these mortgagees brought before the institution of this receivership action. The authority of the court so to do is established. *Clark on Receiverships,* Vol. 1, Section 620; *In re French et al.,* 181 App. Div., 719, (N. Y.) ; *Porter* v. *Sabin,* 149 U. S., 473; *Wabash Railroad* v. *Adelbert College,* 208 U. S., 38; *Farmers Loan & Trust Co.* v. *Lake Street Elevated Railroad Co.,* 77 U. S., 51. These cases, however, except *In Re French,*

afford no further assistance. The principal question therein decided is the right of the Court first acquiring jurisdiction in a receivership to retain exclusive jurisdiction of the property over which the receivership was instituted.

In only one case, namely, *In Re French,* is there anything analogous to the instant case. There seems to be nothing in the books to assist the Court materially in arriving at a conclusion on the proposition here involved.

It has always been the opinion of this court that the courts should be extremely hesitant to adopt any proposition which would tend to impair the lien of a real property mortgage. Not only is this lien a contract right of the highest degree, but the security which it is considered to afford attracts to this form of investment a tremendous amount of money and forms the basis of at least one of the major forms of credit upon which the business of this country is transacted.

Any action of the Court which would militate against the security of the lien of a mortgage would appear to be of possibly far reaching consequences, and such action should be taken only within rules already established or where extraordinary circumstances seem to render it essentially necessary.

This view finds support in the opinion of Judge Jones in the case of *Winterbottom* v. *Superior Savings & Trust Co., Trustee et al.,* 98 Ohio St., 127. Judge Jones says, page 131:

"The law in relation to the receivership of railways has gradually developed until it is now uniformly held that receivers of that class of corporations may incur obligations of the character here involved, which must be paid out of the current earnings of the corporation, and, in lieu of any deficiency therein, out of the corpus of the property itself. *But, even in receiverships of that character, Mr. Justice Brewer, in the frequently cited case of Kneeland* v. *American Loan & Trust Co.,* 136 U. S., 89, 98, *said: 'It is the exception and not the rule that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion*

*in this matter of the displacement of vested liens.'* (The italics are ours.)

"* * * the lower courts of federal jurisdiction have uniformly held that the principles that apply to railway corporations, involving the subordination of vested liens, do not apply to individuals and private corporations where no such public·interest attaches." (Citations).

"* * *"

"The rule is generally recognized that the cost of the custody and preservation of the property in the hands of the court, as well as the taxes, are of course payable out of the corpus of the realty encumbered, either in the case of individuals or private corporations, and are considered part of the expenses and costs of suit. In such cases, when the liens were incurred and accepted by the mortgagees such costs were impliedly assented to when the mortgages were taken. Further, with relation to railway mortgage liens, when the lienholder obtained that class of security he did so with knowledge of the fact that he was acquiring 'it upon quasi-public corporate property which might be operated under the sanction of the court. *This principle, however, does not affect the vested rights existing between mortgagees and individuals or corporations of a private nature. If it did, then any claimant of an insolvent concern, or a partner upon dissolution of partnership, could on his own motion divest the security without consent of the lien holder and possibly without any financial risk to himself.*" (Italics are ours.)

There are cases such as where the mortgage is upon the property in which the business of the receivership is conducted, or where the stay of foreclosure would benefit the estate without seriously affecting the mortgagee, where a stay of foreclosure should be granted; even then such stay should be only for the briefest necessary period and only where it would appear that the mortgage lien would not be seriously affected.

The only case cited in which such stay was granted is *In re French,* 181 Appellate Division, (N. Y.), 7190. In that case the Court says, page 732:

"The only object of the stay was to enable the receiver to sell the equity of the corporation, which under the stay he could do speedily as he did by a mere publication of a notice of sale for two weeks as provided in Subdivision IV, Section 239 of the General Corporation Law. At any

time after the sale it is quite evident that the appellant could have obtained a modification of the order had he seen fit to apply to the court therefor. The only possible prejudice to the appellant by the stay was the delay of a few weeks pending a sale of the equity by the permanent receiver, for there was no attempt to interfere with the lien of the mortgage."

It seems to be admitted that the security of the mortgages, foreclosure of which is herein sought to be stayed, is insufficient to satisfy the claims thereunder. Taxes and interest are accruing and adding to the deficiency. The fact that the staying of these foreclosure suits may conduct to a more orderly administration of this receivership does not, in the opinion of this Court, weigh sufficiently against the impairment of these mortgage liens which would result by bringing them into this receivership action, and perhaps involving them in the expenses of the receivership, to warrant the granting of these motions.

The motion of the receiver in each case is therefore overruled. Exceptions noted.