Emma FRISCH, Respondent,

v.

William A. SCHERGENS, Appellant.

No. 45215.

Supreme Court of Missouri.

Division No. 1.

Nov. 12, 1956.

Rader, Love & Falzone, Clayton, for appellant.

Echeal T. Feinstein, St. Louis, for respondent.

WESTHUES, Judge.

This is an action to determine the ownership of a one-half interest in property located at 5845 Enright Avenue, in the City of St. Louis, Missouri.

Plaintiff Emma Frisch, who admittedly owned a one-half interest in the property, filed this suit to have herself declared to be the owner of the entire fee. Defendant William A. Schergens was the record owner of a one-half interest of which plaintiff claimed she was the equitable owner. Her suit was based on the theory of a constructive trust. The trial court entered a decree for plaintiff subject to a lien in defendant's favor in the sum of $1,100 and the defendant appealed.

Plaintiff filed a motion to dismiss the appeal on the ground that defendant in his brief has failed to comply with Supreme Court Rule 1.08, 42 V.A.M.S. Defendant's "Points and Authorities" consist of seven separate headings. The first six are abstract statements of law with citations of cases thereunder. The seventh is divided into five abstract statements. There is no suggestion as to any error of the trial court.

This being an equity case and therefore reviewable de novo on the merits, we shall determine whether the evidence justified a decree for plaintiff and overrule the motion to dismiss.

We learn the following from the record: Plaintiff was employed in making ladies' hats. In 1940, she lived in a flat at 5920 Theodosia, St. Louis, Missouri. She met the defendant in 1941 and in 1942, they were married but according to the evidence of both plaintiff and defendant, they did not, after the first day, live together as husband and wife. Plaintiff stated that the defendant asked her to marry and they were married in Old Monroe, Missouri. Defendant evidently did not think he asked plaintiff to get married. Note his evidence:

"Q. Where were you married, if you recall? A. Oh, I was married in Old Monroe—what they call more free of heart. You go out and get married in two minutes.

"Q. And did you shortly thereafter tell Miss Frisch that you didn't want to remain married to her? A. That night I told her I was thoroughly disgusted with the deal.

"Q. Who had arranged the deal? A. Miss Frisch arranged the deal.

"Q. And did you tell her you wanted a divorce? A. I told her I would like to get single like I had been. 'I don't like this at all.'"

Soon thereafter defendant's father, with whom he had been living, died and defendant rented a room from plaintiff and lived at the 5920 Theodosia address until plaintiff moved to 5845 Enright Avenue in 1947. In 1945, plaintiff had obtained a divorce from the defendant. Notwithstanding that fact, plaintiff and defendant were during all of this time on friendly terms and when plaintiff moved, defendant also moved to the 5845 Enright place where he occupied a room. In the early part of 1946, when plaintiff received notice to vacate the flat on Theodosia, she began looking for a

place to live. With defendant's assistance, she purchased the property on Enright for a price of $9,100. Title was conveyed to plaintiff and the defendant. The property consisted of an upstairs apartment and a downstairs apartment. There is a sharp dispute in the evidence as to what occurred during the negotiations for the purchase of the property.

Plaintiff claimed that the defendant was representing her in the negotiations; that defendant was a property owner, a dealer in cars, and knew all about real estate and business matters; that she had never owned real estate prior to this purchase and had had no experience with sales of real estate. Plaintiff further testified that the defendant told her she could not get possession of both upstairs and downstairs flats unless there were two names on the deed as grantees because of O. P. A. regulations; that in reliance on that representation, she agreed to defendant's name being inserted in the deed.

It was defendant's contention, and his evidence was to the effect, that it was he who in fact had negotiated for the purchase of the property and plaintiff did not know of it until the deal was about closed; that when she learned of it, she wanted a one-half interest therein; that he agreed; that a note and mortgage were prepared for a loan of $5,900; that plaintiff and defendant advanced $3,200; that by agreement, the deed was made in both names, each to have a one-half interest.

Plaintiff was corroborated in much of her evidence as to what occurred. Chauncey P. Heath, who was the real estate agent through whom the property was purchased, testified as follows:

"Q. Did Mr. Schergens tell you in the presence of Miss Frisch that Miss Frisch was the one who was buying this property? A. Yes.

"Q. He did tell you that? A. Yes. To the best of my recollection, he told me that Miss Frisch was buying

the property and that he was going to put up seven hundred dollars into it.

"Q. Did he tell you that he was formerly a husband of Miss Frisch? A. Yes.

"Q. Did he tell you that he was helping her out in this deal? A. That's what I was told."

Mr. Heath also testified that the question of the O. P. A. regulations was discussed as well as what the charge would be if, at a later date, the title to the property were to be conveyed to plaintiff; that he informed them it would be $25. The real estate agent testified further that in 1953 he prepared a deed conveying the title to plaintiff and asked the defendant to sign the deed and he refused.

Plaintiff was further supported in her contention in that it was admitted she took complete charge of the property, entered into contracts for the alteration of the building to make more apartment units; she paid all of the light, water, and gas bills, and, in general, supervised the care of the property.

There was evidence that on a number of occasions the defendant made statements to various people that plaintiff, and not he, was the owner of the property. Defendant denied making any such statements but his evidence was not corroborated by any other witness.

Plaintiff testified that she relied on defendant for advice and had confidence in him; that she depended on him in this transaction. Defendant admitted that he negotiated for the purchase of the property but claimed he was acting for himself. As shown by the above-quoted testimony, the real estate agent's evidence was that the defendant told him plaintiff was buying the property. On cross-examination, Heath testified:

"Q. Did you have communications with both? A. I don't remember. I think that my transactions were with

him, because he was supposed to be on friendly terms with his ex-wife, and was taking care of the matter for her.

"Q. Did you return any papers in this connection to Miss Frisch, or send her copies of any letters, which you may have sent to anyone else? A. Well, I don't recollect that I did. I would say that I probably would send them to him, because he was from the very first acting as a friend of Miss Frisch—from my impression of it, and that he was to handle this whole matter for her, and that he was to have a room in the house for a while. That was my recollection."

The trial court found that a confidential relationship existed between plaintiff and the defendant and that plaintiff depended on the defendant at the time of the acquisition of the property in question. It was on the theory of a constructive trust that the trial court decreed title to plaintiff on condition that plaintiff pay defendant the sum of $1,100 which the trial court found defendant had advanced plaintiff at the time of the purchase.

In cases of this nature, this court reviews the record de novo and may make its own findings of facts. However, where there is substantial evidence on both sides, its weight and credibility depend to some extent on the appearances of the witnesses and in such cases, we defer to the trial court's findings. This is for the obvious reason that a trial court before whom the witnesses appear in person is in a much better position to determine the truth than an appellate court is from reading the record. Basman v. Frank, Mo., 250 S.W.2d 989, loc. cit. 992(1).

The evidence in this case justifies a finding that defendant first suggested the idea of having his name placed in the deed so as to comply with O. P. A. regulations. The evidence also justified a finding that defendant was acting for plaintiff in the negotiations of the purchase of the property and that, contrary to the true intention of the parties, had his name placed in the deed to enable him to make claim for a one-half interest. These facts justified the trial court's entering a decree for plaintiff on the theory of a constructive trust. 89 C. J.S., Trusts, § 15, p. 726; 89 C.J.S., Trusts, § 139c, p. 1023; Suhre v. Busch, 343 Mo. 679, 123 S.W.2d 8, loc. cit. 15(1–3); Lucas v. Central Missouri Trust Co., 350 Mo. 593, 166 S.W.2d 1053, loc. cit. 1057(2, 3).

Defendant says in the argument of his brief that plaintiff had title placed in herself and the defendant for the purpose of evading the O. P. A. regulations and therefore a court of equity should not grant her relief. As stated above, the evidence justified the conclusion that it was defendant's idea to have two grantees named in the deed. If the conduct of plaintiff was wrong, it was invited and instigated by the defendant. He cannot now take advantage of his own wrongdoing. Bovard v. Bovard, Mo., 180 S.W.2d 592, loc. cit. 595(4, 5); Wright v. Brown, Mo., 242 S.W.2d 486, loc. cit. 489(6, 7); Langley v. Devlin, 95 Wash. 171, 163 P. 395, 4 A.L.R. 32; Harrety v. Kontos, 238 Mo.App. 519, 184 S.W.2d 195, loc. cit. 198(3); 30 C.J.S., Equity, § 98, p. 487; 12 C.J.S., Cancellation of Instruments, § 46b, p. 1018.

The decree of the trial court was for the right party. It should be and is hereby affirmed.

All concur.