In re Dorsett H. GANT d/b/a
Mid–America Monetary
Services, Debtor.

David A. SOSNE, Trustee, Plaintiff,

Barry Faintich, Intervenor,

v.

Dorsett H. GANT and Gwynlyn
H. Gant, Defendants.

Bankruptcy No. 93–43915–399.
Adv. No. 94–4252–399.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Jan. 23, 1995.

David A. Sosne, Trustee, St. Louis, MO.

Fred H. Eppenberger, St. Louis, MO, for Mrs. Gant.

Ann R. Sachar, St. Louis, MO, for trustee.

Joseph S. Rosenthal, St. Ann, MO, for intervenor.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

This case centers on the Trustee's Application to sell real property and the Defendants'

defense of an alleged mistake in the conveyance of the real estate to the Debtor and his spouse.

## JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(N) & (O).

## STATEMENT OF FACTS

This is an action by the Chapter 7 Trustee, David A. Sosne, ("Trustee") to sell property of the Debtor, Dorsett H. Gant d/b/a Mid–America Monetary Services, ("Debtor"), and a co-owner, Gwynlyn H. Gant, ("Mrs. Gant"), pursuant to 11 U.S.C. § 363(b) & (h). The Debtor and Mrs. Gant object to the proposed sale alleging that the property the Trustee seeks to sell is not property of the estate and instead belongs solely to Mrs. Gant. As this action invokes the equitable powers of this Court, a particularly detailed recitation of the facts is necessary.

### A. Contract for Deed

In 1983, Mrs. Gant and Mary Kathryn Nierman entered into a contract for deed concerning a certain vacant lot, ("Property"), located next to the former home of the Debtor and Mrs. Gant.[1] Over the course of two years, Mrs. Gant fully performed the terms of the contract for deed by paying the purchase price in quarterly installments. Mrs. Gant testified at trial that she alone paid for the Property with her separate funds obtained from an inheritance. Her testimony was not contradicted.

Following the completion of payments under the contract for deed, Ms. Nierman forwarded a signed notarized deed for the Property on July 31, 1985. Several years later, in 1991, Ms. Nierman learned that the 1985 deed was not recorded and that, in fact, the deed could not be found.[2] The Arthur Kniffen Realty Company was employed to clear title to the Property.

In November 1991, a replacement deed ("1991 Deed") was prepared by Kniffen Realty. This deed differed from the 1985 deed in that it mistakenly included the Debtor as a grantee along with Mrs. Gant. A representative from Arthur Kniffen Realty testified at trial and, to the potential detriment of his company, noted that the 1991 Deed was prepared listing Debtor as a joint grantee because it was assumed that the Debtor and Mrs. Gant wanted both their names on the Property.[3] Neither Mrs. Gant nor Ms. Nierman noticed the error in the 1991 Deed.

The Debtor then delivered the deed for recordation and the 1991 Deed was subsequently listed on the St. Louis County land records as property held jointly by the Debtor and Mrs. Gant. Although the Debtor and Mrs. Gant may have been put on notice by the 1992 and 1993 tax bills and letters concerning the Property addressed to "Dorsett H. Gant and Gwynlyn H. Gant," it was not the Debtor filed his bankruptcy petition that the mistake was recognized.

### B. Bankruptcy

The Debtor filed his petition for Chapter 7 relief on July 20, 1993. A Chapter 7 bankruptcy involves the immediate appointment of a trustee who preserves the value of a debtor's property by collecting assets, liquidating them, and ensuring the equal distribution of the assets by making dispersements to creditors according to the relative priority

---

1. Intervenor Faintich purchased the former Gant home at foreclosure. His interest in this action concerns an alleged encroachment his house onto the Property.

2. Although Mrs. Nierman did not testify at the trial, her testimony was offered by affidavit; the authenticity of her Affidavit has never been contested.

3. The evidence adduced at trial showed that the Kniffen Realty representative examined the lot next to the Property (which, at the time, was the Gant's homestead) and noted that it was titled in both the Debtor's and Mrs. Gant's name. The representative assumed the Gants wanted the Property similarly titled and thus prepared the 1991 Deed to replicate ownership in the homestead.

of their claims. In performing his duty to investigate the assets of the Debtor, the Trustee learned of the Debtor's recorded ownership interest in the Property. Debtor neither listed nor disclosed this alleged interest in his bankruptcy schedules and when this interest, and consequently the mistake in the 1991 Deed, was discovered, the Debtor took immediate steps to quitclaim any interest in the Property to Mrs. Gant.

The Trustee no doubt viewed the Debtor's actions as an attempt to circumvent the bankruptcy process by failing to disclose assets and then disclaiming any ownership upon discovery. To prove his theory, the Trustee introduced at trial numerous tax bills addressed to the Debtor and Mrs. Gant, the Debtor's Declaration of Homestead in the Property, and a Notice of United States Land Patent listing the Debtor as "Owner." [4]

The Debtor, conversely, points to his failure to disclose the asset and his quitclaim of interest as evidence that he knew nothing of the mistake brought about by the 1991 Deed. While never disputing the authenticity of the Trustee's evidence, the Debtor and Mrs. Gant appeared at trial to be unaware of the legal ramifications of the Declaration and the Notice. Furthermore, Mrs. Gant testified that the Debtor generally handled all financial matters and thus may not have understood the meaning of the tax bills listing both Gants as responsible for the taxes on the Property.

The Trustee proceeds under § 363(b)(1) of the Bankruptcy Code [5] which provides that the "Trustee, after notice and a hearing, may use, sell, or lease, ... property of the estate." Specifically, § 363(h) permits the Trustee to "sell both the estate's interest ... and the interest of any co-owner in property in which the debtor had, at the time of the

commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety" subject to four stated qualifications. Each of the qualifications has been met by the Trustee's evidence.

The Trustee filed this adversary proceeding seeking to sell the Property to the Concordia Lutheran Church–Kirkwood, Missouri. The Intervenor, Barry Faintich, also seeks to purchase the Property in an effort to protect his newly purchased lot.[6]

The Debtor does not dispute that as of the commencement of the case, the St. Louis County land records listed the Property as being owned jointly with Mrs. Gant, but instead calls upon the equitable powers of this Court to find that the Property is not property of the Debtor's estate and instead is the sole property of Mrs. Gant.

## DISCUSSION

### I. The Trustee's Argument

■ The Trustee's legal argument centers on the Debtor's recorded interest in the Property. Because a recorded interest is the best evidence of ownership of property, the Debtor's recorded interest on the date of his bankruptcy filing must be respected. This interest became property of the bankruptcy estate on the date of filing and therefore subject to the Trustee's sale provisions of § 363. Further, § 544 of the Code permits the Trustee to avoid any interest in real property that arose after the date of bankruptcy filing, therefore the Debtor's postpetition quitclaim of his interest in the Property is essentially a nullity.

■ The Trustee's attempt to sell the Property (and to avoid the quitclaim) rests on the belief that the Property is "property of the estate" as that term is used in § 541.[7]

---

4. This Notice was in the form of a sign which the Debtor placed on the Property.

5. 11 U.S.C. § 101–§ 1330, all references are to Title 11 unless otherwise noted.

6. There was much testimony at trial concerning the offers of the Concordia Lutheran Church and Intervenor Faintich. This Court notes that Mr. Faintich's offer (brought subsequent to the filing of the Trustee's Complaint) is the highest and best offer for the Property.

7. Section 363(h) is premised upon subsection (b). Subsection (b) states that "[t]he trustee ... may ... sell ... property of the estate." Section 544 does not use the term property of the estate and instead uses the words "property of the debtor." For the purposes of this Memorandum Opinion, the breadth and meaning of the phrases is coextensive.

Under § 541(a)(1) of the Code, a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The Eighth Circuit has recognized that "[t]he legislative history of this section clearly establishes Congressional intent that the bankruptcy estate be as all-encompassing as the language indicates." *In re Graham*, 726 F.2d 1268, 1270 (8th Cir.1984).[8] Moreover, § 541 is broad enough to encompass property held jointly by a debtor and a non-debtor. *In re Garner*, 952 F.2d 232 (8th Cir.1991).

■ The Trustee asserts that the Debtor's recorded interest in the Property is sufficient to meet § 541's language—"interest of the debtor in property as of the commencement of the case." "However, the nature of the interest is determined by nonbankruptcy state law." *In re Combs*, 101 B.R. 590, 592 (W.D.Mo.1989); *In re Livingston*, 804 F.2d 1219, 1221 (11th Cir.1986). Therefore, Missouri law determines whether the Debtor has any ownership interest in the Property. In considering Missouri law, this Court notes both the effect of a recorded deed and any equitable powers which Missouri courts have employed to examine and possibly correct an improper or mistaken deed. Under the circumstances as they exist in this case, if the Court finds that the Debtor is not an owner of the Property, the Trustee's Application to Sell must be denied. The Property would not be an interest of the Debtor in property as of the commencement of the case and thus not subject to § 544's avoiding power or the § 363 sale provisions.

## II. Missouri Law

### A. The Effect of Recording

■ Real property recordation is a subject with roots in history deeper that the birth of our nation and, despite attempts to develop a better method (such as the Torrens System), it remains largely unchanged over the centu-

ries. The purpose of recordation is to put the world on notice that someone claims an interest in property. In recording the deed, anyone who later desires to purchase the property can determine the true owner and any other interest claimed in the property.[9]

■ So strong is the dependence on this system that a purchaser of real property may very well lose her interest in property if it is not recorded. Until documents are recorded, they are valid only between the parties thereto. *Godwin v. Gerling*, 362 Mo. 19, 239 S.W.2d 352, 360 (1951). Once recorded, notice is imputed to all persons and subsequent purchasers. *Id.* It is established by long-standing authority that a purchaser is charged with constructive notice of all recorded instruments lying within the chain of title. *Edwards Land & Timber Co. v. Richards*, 349 Mo. 758, 163 S.W.2d 581, 585 (1942). The effect of the recording statutes is that subsequent bona fide purchasers of realty (such as the Trustee, by virtue of his appointment under the Code), with no actual notice of an unrecorded interest in that realty, take free of that unrecorded interest. *Bremen Bank & Trust Co. v. Muskopf*, 817 S.W.2d 602, 608 (Mo.Ct.App.1991).

### B. Equitable Power to Correct a Mistake in a Deed

■ The bankruptcy court is a court of equity, which means that it may issue orders that it deems necessary to carry out the provisions of the Code. While this grant of power is as broad as that language in § 105(a), the Court is nevertheless guided and directed by state law and the Missouri courts in interpreting any equitable remedies available to the Debtor and Mrs. Gant, which may serve to alleviate some of the unfairness resulting from the presumptions in favor of a recorded deed.

A careful review of the Missouri Revised Statutes indicates that there is no express

---

8. Although the underlying holding in *Graham* was abrogated by the Supreme Court's opinion in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (holding that ERISA benefits are not property of the estate), the Circuit Court's instructions for reading § 541 remain valid.

9. The Court thinks back to the tale of the unscrupulous confidence man who would sell Brooklyn Bridge to the hood-winked public. With the benefit of examining the records, one could easily determine who, in fact, owned the bridge.

statutory provision which would permit Mrs. Gant to correct the deed nunc pro tunc. Furthermore, an older Missouri Supreme Court case indicates that there is no means by which Mrs. Gant can correct the mistake. In a suit seeking to correct a sheriff's error concerning the name of the grantee and the date of the deed, the Missouri Supreme Court wrote: "If plaintiff seeks to have the deed reformed in equity, he must fail, for we have held that the statutory remedy providing for the correction of an officer's deed is exclusive." *Hill Inv. Co. v. Peter Gerlach Co.,* 293 S.W. 102 (Mo.1927).

A more recent opinion by the Missouri Supreme Court, however, permits the trial court's correction of a deed which "contrary to the true intention of the parties, had [an additional person's] name placed in the deed" enabling him to claim a one-half interest. *Frisch v. Schergens,* 295 S.W.2d 84, 87 (Mo. 1956). In *Frisch,* the trial court entered a decree for the party who should have been the sole grantee absent the mistake of the parties. The trial court found that the defendant held the property in a constructive trust for the benefit of the true owner. The Supreme Court upheld the decision of the trial court without comment on its earlier decision in *Hill Inv. Co.*

While there is no case that explicitly overrules *Hill Inv. Co.,* other Missouri courts have followed the reasoning in *Frisch* to impose similar constructive trusts for the benefit of individuals, who by inadvertence, mistake, or error, were never listed or improperly listed in a deed. In *McFarland v. Braddy,* 560 S.W.2d 259 (Mo.Ct.App.1977), the court imposed a constructive trust for the benefit of a wife who was never listed on the deed as the joint owner of the farm purchased by herself and her husband. In commenting on the proper authority to impose a constructive trust, the court wrote:

> To establish an implied trust an extraordinary degree of proof is required. The evidence must be so clear, cogent, unequivocal and positive as to banish doubts from the mind of the chancellor to exclude every reasonable doubt in his mind. A preponderance of the evidence is insufficient. The evidence must be so unquestionable in

its character, so convincing that no reasonable doubt can be entertained of its truth.

> 560 S.W.2d at 263 *citing March v. Gerstenschlager,* 436 S.W.2d 6, 8 (Mo.1969); **see also** *Fix v. Fix,* 847 S.W.2d 762 (Mo.1993) (applying the same standard to determine a constructive trust in a testamentary disposition).

Mrs. Gant's request for an equitable remedy thus rests on this extraordinary degree of proof.

## III. Application of Law to the Facts

The Court is convinced by the evidence that the intent of Mrs. Nierman and Mrs. Gant is clear. Given the Affidavit of Mrs. Nierman, the testimony of the Kniffen Realty representative, and Mrs. Gant, the Court finds that the transaction which was intended was the sale of the Property to Mrs. Gant alone. Upon observing the demeanor of Mrs. Gant, her explanation as to the true meaning behind the 1991 Deed is trustworthy.

The Trustee throughout the trial placed great emphasis on the fact that the Debtor, and not Mrs. Gant, performed many of the financial requirements for the Property. This seems less like ownership and more like the established pattern of a married couple who has divided up the marital "chores." Given the apparent ages of the Debtor and Mrs. Gant, it may well be true that the Gants represent the more patriarchal American family in which the husband performs many, if not most, of the financial duties.

The remainder of the Trustee's evidence is similarly unconvincing. Throughout the trial, the Trustee relied on three indicia that the Debtor was intended as a grantee or that he acted inconsistent with his position that he is not an owner: the tax bills addressed to both the Debtor and Mrs. Gant, the Debtor's declaration of homestead in the Property, and the Notice of United States Land Patent listing Dorsett Gant as "Owner." None of these items overcome the overwhelming evidence that Mrs. Gant is the sole owner of the Property.

The tax assessor of St. Louis County sends tax bills according to the land records. It is totally consistent with the testimony of Mrs.

Gant, who was a credible witness, that she and her husband failed to recognize that the tax bill indicated joint ownership. Furthermore, Mrs. Gant's testimony revealed that she played a limited role in the family finances.

The Declaration of Homestead and the Notice are equally unconvincing.[10] Throughout this entire adversary proceeding, the Debtor—who has never engaged the services of an attorney—has filed numerous unintelligible, incomprehensible, and unhelpful briefs, notices, declarations and other such pleadings with the Court. His contentious presentations, his hyperbole directed at the Court and the Trustee, and his understanding of the law have served only to waste the valuable resources of the Court and the Trustee's office. It is clear, upon reviewing the Declaration, the Notice, and the file as a whole that the Debtor has absolutely no cognizance of the legal ramifications of his actions to protect the Property for his wife. Thus, this Court will not give credence to the Debtor's actions when it is clear from this entire proceeding that the Debtor has taken numerous inconsistent and contradictory actions all in the course of defending this lawsuit.[11]

Upon consideration of the foregoing, this Court finds the proof proffered by Mrs. Gant so unequivocal, positive and cogent that there can be no doubt that the 1991 Deed was intended and meant to convey the property to solely Mrs. Gant. Any interest which the Debtor may have in the property as a result of the 1991 Deed is held in constructive trust for the sole benefit of Mrs. Gant. Trustee's Application to Sell must be denied because the Debtor never had an ownership interest in the property to which the Trustee could succeed and sell.

Accordingly, it is

ORDERED that the Trustee's Motion to Sell is Denied;

IT IS FURTHER ORDERED that this adversary proceeding is Dismissed;

IT IS FURTHER ORDERED that any and all additional relief sought by the parties is Denied.

10. The Debtor has never explained the significance of a United States Land Patent, and the Court, therefore, places no value on such a patent in this case. Trustee's reliance on the Debtor's patent Notice is similarly unpersuasive.

11. The Court wishes to note that it was not until the final day of the trial, when Mrs. Gant ob- tained the services of an attorney, Mr. Fred Eppenberger, that it fully understood the Debtor's and Mrs. Gant's position. Had Mrs. Gant acted sooner in engaging Mr. Eppenberger's services this troublesome case might have been a much less prolonged and tedious affair.