Poston, *Appellant,* v. Balch.

1. **Equitable Interference as between Parties not in pari delicto.** Where one who reposes confidence in another, has been induced by the fraudulent misrepresentations of the latter to attempt the perpetration of a fraud, the two are not *in pari delicto,* and as between them the rule in favor of the possessor cannot be invoked to prevent equity from interfering on behalf of the former.

2. **Case Adjudged.** The plaintiff and his wife, having determined to separate, agreed upon a division of property, and she accepted a portion in lieu of alimony and other claims against his estate. Previous to this, she had instructed her attorney to institute a suit on her behalf for a divorce. The attorney not being apprised of the financial settlement, inserted in the petition a claim for alimony. The husband not knowing that this was done by mistake, became greatly alarmed. While in this state of mind, he visited the present defendant, who was an old acquaintance and apparently warm friend. During the visit he disclosed his troubles with his wife, and requested the defendant's intercession to induce her to withdraw her claim. The defendant undertook the mission, but instead of carrying it out in good faith, urged her to insist upon her claim. She, however, declined, and declared her purpose of standing by the arrangement already made. The defendant, nevertheless, reported to the plaintiff that she would insist on the claim as made in the petition, and suggested to him, as a means of defeating her, that he should put his property into the hands of a friend. Acting on this suggestion, plaintiff did, for a nominal, or, at least, an inadequate consideration, transfer all of his property to defendant. Having subsequently discovered the fraud practiced upon him, plaintiff brought this suit to set aside the transfer, and to subject certain real estate, for which defendant had exchanged the property, to a lien for its value. *Held,* that the parties were not *in pari delicto,* and equity would afford the relief sought.

*Appeal from Knox Circuit Court.*—HON. JOHN C. ANDERSON, Judge.

*Harrington & Cover* and *B. G. Barrow* for appellant.

Courts of equity will protect the weak minded and unsuspecting from the frauds of those who are their superior and would dupe them into a false belief, and on the question of fraud or imposition, weakness of mind is an element of great importance.      Willard's Eq., 202, 203, 204 ; *Cadwallader v. West,* 48 Mo. 483 ; *Freeland v. Eldridge,* 19 Mo. 325.   The defendant relies upon the principle that equity will not grant relief to persons who are parties to agreements against public policy, or where they are *participes criminis.*   This rule, we contend, cannot be applied in this case.   Story's Eq., (8 Ed.) vol. 1, § 298.   It is never enforced where the defendant takes advantage of plaintiff's condition or situation.   The parties must be equally guilty. *Vide* note 1 to section above.   To enforce the rule the parties must stand *in pari delicto,* and if there are different degrees of guilt caused by oppression, imposition, undue influence or inequality of condition, the rule does not apply. *Gowan's Admr. v. Gowan,* 30 Mo. 472 ; 1 Story's Eq., §§ 300, 300 a and b, 307, 308 ; *Barnes v. Brown,* 32 Mich. 146 ; *Ford v. Harrington,* 16 N. Y. 285 ; Bump. on Fraud. Convey., 447.   All of the cases where the courts have refused to give relief are where both parties have an equal knowledge, while in this case they urge the application of the rule, although the defendant falsely represented what plaintiff's wife said, which induced plaintiff to follow the advice of defendant.   Transactions to come under the law of *particeps criminis* must not only be intended to hinder and delay creditors, but have the effect to do so, and unless a party has creditors or parties to whom he is liable and who are intended to be defrauded, is not within the rule. Wag. Stat., pp. 279, 280, 281.

*R. B. Dysart* and *E. J. Newton* for respondent.

There is no equity in plaintiff's bill.   It shows, upon

its face, that plaintiff assigned the notes to evade a judgment that might be rendered against him. According to his own showing he feared his wife might recover alimony, and, therefore, he assigned the notes. The fact that he had an agreement with his wife not to demand alimony, was not binding on either. She still had a right to ask and recover alimony. But even if she had been barred by such agreement, when the plea was made in the divorce suit, yet if plaintiff assigned his property while such demand was pending for the express purpose of defrauding a possible claim, then it is such an assignment as leaves him without legal or equitable remedy. *Randall v. Howard*, 2 Black 585 ; *Trimble v. Doty*, 16 Ohio St. 118; Broom's Legal Max., (7 Ed.) § 730 *et seq ; Nellis v. Clark,* 20 Wend. 24.

NAPTON, J.—The object of this action is to set aside certain transfers of notes and other personal property from plaintiff to defendant, as fraudulently obtained, and to subject certain real estate of the defendant, into which it is alleged this personal property was converted by defendant to the satisfaction of this claim. The facts recited in the petition, upon which the plaintiff bases his claim to relief, are substantially as follows : The plaintiff, as he alleges, was a man of weak mind, easily alarmed and readily imposed on by one who had his confidence. He was married•sometime in 1859, to Mrs. Ann Maxey, and they lived together till about June, 1870, when they parted. Previous to their separation, with a view to settle any claim she might have to alimony, it was agreed between them that plaintiff should give certain property to his wife, which she agreed to receive in lieu of all claims against him. The plaintiff, in pursuance of this agreement, on the 28th day of June, 1870, transferred to one Dougherty, as trustee for her, property of the value of $1,000. Previous to this she had authorized a suit to be commenced against him for a divorce, but the attorney who prepared the petition, not

being apprised of this arrangement and division of property between them, inserted in the petition the usual claim for alimony, fixing the amount at $1,000. The plaintiff, when served with notice of this suit, was alarmed, and relying on the friendship of defendant, employed him to see his wife and get her to desist from this claim. The defendant accepted this trust, and did accordingly visit Mrs. Poston, and was informed by her that she had no claim for alimony; that the plaintiff and she had arranged that matter satisfactorily; that if her attorney had put in her suit for divorce such a claim, it was a mistake, and she would have it corrected. The defendant, however, notwithstanding this disclaimer, advised her to insist on the claim, saying that the plaintiff was a "trifling fellow," and that she ought to put him through, but she still declined. It is further alleged that when defendant returned from this visit to plaintiff's wife, he stated to plaintiff that his solicitations to his wife were of no avail, that she intended to get all his property, and refused to withdraw her claim; that plaintiff was alarmed, and that defendant suggested to him that he put his property in the hands of a friend till the trouble was over, and the plaintiff being frightened and deceived, agreed with defendant to deliver to him certain notes he had on solvent persons, and did deliver them, and that defendant also took possession of certain horses and mules, belonging to plaintiff, without his knowledge or consent, and converted them to his own use. All this was done, as is alleged in the bill, without any consideration, and the bill alleges that the notes were sold to innocent purchasers for value, but the proceeds were invested in the lots which were conveyed to defendant, and upon which the plaintiff asks a lien.

The defendant's answer is a denial of every material allegation in the petition. He asserts that he bought the notes referred to in the petition for value, that is, for seventy cents on the dollar, and that he gave $360 for the horses, mules, &c.

It is unnecessary to rehearse the testimony of plaintiff, which is merely a recital under oath of all the material charges made in the petition, and, so far as his evidence goes, clearly establishing the truth of each, not excepting the one which declares him to be of weak mind. The testimony of the defendant is equally positive the other way. In short, there is an irreconcilable conflict in the proof, especially between that of plaintiff and defendant. There is no possibility of attributing these differences to mistake, inadvertence or the unconscious influence to which self interest occasionally subjects the fairest and most honest intentions. There is, however, one point upon which we are not compelled to rely on the mere statements of plaintiff and defendant, and, as it is the point upon which our conclusions will be based, I will state the facts as they seem to be established, not merely by the plaintiff's testimony, uncontradicted except in a general way, by defendant, who fails to give any version of what occurred himself, but as they are confirmed by the testimony of plaintiff's wife, by her attorney, Judge Barrow, and his partner, Mr. Harrington, by Dougherty, her trustee, and by her brother-in-law, Pogue, at whose house Mrs. Poston was living when the interview between her and the defendant occurred. And I may add that the results which followed very strongly if not conclusively, show that the occurrences stated by these witnesses are correctly stated in all essential particulars.

It appears then, from this testimony, that after the separation of plaintiff and his wife, and before he had been served with a copy of the petition for divorce, he and his wife had agreed upon an amicable division of property, by his giving her, or rather her trustee, Dougherty, all the property brought by her into the marriage and a satisfactory division of its increase between them, the wife agreeing that she would relinquish, in consideration of this division, all claims whatever against him for alimony, or on any other account. After this, the plaintiff was served with

the petition in the divorce suit, in which a claim for $1,000 was asserted. This claim was put in the petition by her lawyer without her knowledge, but it seems, gave the plaintiff, who was not aware of this, great uneasiness. He rode over to the town of La Plata and stopped at the house of defendant, who, it appears, kept a hotel or boarding house at that place. His object in stopping at defendant's house was, as he states, to inquire of defendant in relation to his kinsfolk in Ohio, with whom defendant was well acquainted, both plaintiff and defendant having come from the same town or county in that State. He was treated with great kindness by defendant, and was pressed to stay all night, but left and went to Kirksville, and returned the next morning to La Plata. Believing that defendant was a warm friend of his, the plaintiff then recounted to him the difficulties with his wife, and her attempt to get alimony out of him after she had declared her intention not to claim any. Considering him as a reliable friend, he requested defendant to go to his wife and endeavor to persuade her to withdraw her claim in her petition for divorce, which the plaintiff thought was contrary to their previous agreement. The defendant accepted this trust; went to Pogue's where Mrs. Poston was then staying, but instead of acting in the capacity of Poston's friend, urged Mrs. Poston to prosecute her suit for alimony, and insisted that Poston was a " trifling fellow," and advised her to get all she could out of him. To all this Mrs. Poston stated that she and her husband had arranged this, that he had given to her all she claimed, and she desired nothing more ; that she was perfectly satisfied with the arrangement as to the property already concluded. On returning to plaintiff it is conceded that the defendant represented to him that his wife was totally unwilling to abide by the arrangement made between them, and would insist on her right to alimony, as claimed in the petition for divorce. Upon this report, and the suggestion of defendant to put his property

out of her reach, the transfer of the notes and stock was made.

The circuit court dismissed the bill, manifestly on the ground that the parties were *in pari delicto*, and, therefore, on a well established maxim of the law, the condition of the defendant should not be disturbed. The general principle, based on the maxim that " *in pari delicto potior est conditio defendentis et possidentis*," is beyond dispute, but there are exceptions to this rule. To say nothing of the exceptions which have been made, when the relation of lender and borrower exists, or that of trustee and *cestui que trust*, or·that of parent and child, or husband and wife, or attorney and client, Judge Story observes that "the general principle which governs in all cases of this sort is, that if confidence is reposed, and that confidence is abused, courts of equity will grant relief." 1 Story Eq., § 308. " Courts of equity," the author continues, " Do not sit, or affect to sit in judgment upon cases as *custodes morum*, enforcing the strict rule of morality. But they do sit to enforce what has not been unaptly called a technical morality. If confidence is reposed, it must be faithfully acted upon, and preserved from any intermixture of imposition. If influence is acquired, it .must be kept free from the taint of selfish interest and cunning and overreaching bargains." " A breach of trust is, of itself, evidence of fraud; nay, of the greatest fraud; because a man, however careful otherwise, is apt to be off his guard when dealing with one in whom he reposes confidence."

The question in this case is, then, whether both are *in pari delicto*. A confidence was reposed in defendant which confessedly was grossly abused. Not only did the defendant, as appears plainly from the testimony of Mrs. Poston, fail to act as the friend of plaintiff, but on his return to plaintiff he totally misrepresented the result of his interview. That such was the fact, as stated by plaintiff, is sufficiently apparent from what followed—the transfer of the notes, at the suggestion of the defendant, upon a nom-

inal, or at least an inadequate consideration, with a view to defeat his wife's supposed claim for alimony. Shall the defendant, who was principal in this gross fraud, be allowed to avail himself of the maxim "*in pari delicto potior est conditio defendentis*," and thus retain the profits of his deception? "The doctrine, says Judge Story, "May be laid down as generally true, that the acts and contracts of persons who are of weak understanding, and who are thereby liable to imposition, will be held void in courts of equity if the nature of the act or contract justify the conclusion that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented or overcome by cunning or artifice, or undue influence." 1 Story Eq., § 238. I do not attach any especial importance to the relative intellectual or business capacities of the plaintiff and defendant in this case. Sir Joseph Jekyll, in the case of *Osmond v. Fitzroy, &c.*, 3 Peere Williams 129, makes the following observation on this point: "Where a weak man gives a bond, if there be no fraud or breach of trust in obtaining it, equity will not set aside the bond only for the weakness of the obligor, if he be *compos mentis;* neither will this court measure the size of people's understandings or capacities, there being no such thing as an equitable incapacity, where there is a legal capacity. But if a bond be insisted to have been given for a consideration, where it appears there was none, or not near so much as is pretended, equity will relieve against it. In the principal case there appears to have been a trust reposed by the parents in a servant to take care of an heir, and prevent his being imposed upon; and the servant, instead of acting agreeably to this trust, himself imposes upon him."

The principal ground then on which such contracts are set aside is not so much the relative shrewdness and business capacity of the parties, as the breach of confidence, which Sir Joseph Jekyll says is evidence of fraud, and of the grossest fraud. The want of consideration, or the sufficiency of it, is, of course, an important fact in leading to

this conclusion, and when it was doubtful upon the testimony whether this was so or not, as in *Gartside v. Isherwood*, 1 Brown Ch. 562, the chancellor directed a jury to say whether the consideration was adequate or not. There was evidence in the present case quite contradictory on this point—the plaintiff's evidence tending to show no consideration at all, and that all the money paid upon the transfer was in fact plaintiff's money, and merely handed over to defendant so that before witnesses it might be passed to plaintiff and received by him as a full compensation for the bargain, and thereby enable plaintiff to assert the good faith of the sale. On the contrary, the testimony of the defendant, and other witnesses to the transaction, tended to show that money was handed to plaintiff, but how much does not appear. There is no evidence to show that plaintiff's weakness of mind was such as to authorize a commission of lunacy, and most of the witnesses agree that he was not destitute of ordinary sense, but the whole history of his transactions with defendant show that he was dealing with one greatly his superior in sagacity, and that he was easily alarmed, and in this state of mind easily imposed on. That the consideration was grossly inadequate, is conceded. That no consideration at all was given by defendant, is supported by strong evidence, and if the court was not satisfied on that question, it should have been submitted to a jury.

We base our conclusions, however, to set aside the transfer solely on the ground that there was a breach of confidence in the case, and, although the relations of the parties were not of that character which renders transactions between them on inadequate considerations presumptively void, so as to require satisfactory proof to establish their fairness, as in the case of attorney and client, guardian and ward, and such like relations, yet they were such as required from the party in whom a special trust was reposed, the utmost degree of good faith. It must appear that the contract was fair, just and equitable, and not pro-

cured by undue influence and false representations. Here the transfer was made at the suggestion of the defendant, following a false statement of his interview with plaintiff's wife. The parties were not *in pari delicto*. It is probable that the sole ground upon which the bill was dismissed in the circuit court was the participation of both parties in the intention of defeating the supposed claim of Mrs. Poston for alimony. The defendant was perfectly aware that no such claim had any existence. The plaintiff assumed that the report of the defendant, who was especially intrusted by him, was true, and under this hypothesis, accepted the offer of defendant to place his property beyond the reach of this claim.

The plaintiff, it seems, was entirely out of debt. The case of *Trimble v. Doty,* 16 Ohio St. 118, is in this respect without this important characteristic. The defendant, in that case, had no special confidence reposed in him, he was one of several creditors, and induced the plaintiff, his debtor, to assign to him all his property, upon his promise to account for the property, and the court refused to aid the plaintiff to recover damages for the fraud, on the ground of his participation in it. But in this case, by the grossest abuse of confidence, a double fraud was perpetrated, an assumption of friendship when the opposite was the character really acted, and a false report of the result of the interview confided to him by the plaintiff, calculated to increase the alarm of one already excited, and to induce an acquiescence in plaintiff's proposal to put his property in defendant's hands to escape a liability to which defendant well knew it was not exposed. The plaintiff had no creditors, but was induced to believe that he had one who would pursue him to the last extremity. We do not regard the parties as *in pari delicto*, and, therefore, reverse the judgment and remand the cause, with instructions to enter a decree in conformity with this opinion. HENRY, J. not sitting.

REVERSED.