HALLIE HARRETY ET AL., RESPONDENTS, v. NICK KONTOS, APPELLANT.
—184 S. W. (2d) 195.

Kansas City Court of Appeals. December 4, 1944.

*J. V. Gaddy* and *Abe Goldman* for appellant.

*Conkling & Sprague* for respondents.

SPERRY, C.—Hallie and Frank Harrety, husband and wife, plaintiffs, sued Nick Kontos, defendant, in equity seeking cancellation of a chattel mortgage. Defendant, by counterclaim, sought judgment for $1600, the amount of the note secured by said chattel, and foreclosure of the chattel. Judgment was for plaintiffs on their petition and against defendant on his counterclaim. Defendant appeals.

Plaintiffs gave testimony to the following effect: Frank and defendant had been intimate friends and associates, working together in restaurants for more than than twenty years prior to the trial. Hallie had been an intimate friend of defendant, since her marriage to Frank, for a period of about fifteen years. For fourteen years, prior to 1939, Frank had operated a restaurant in St. Joseph, at a certain location, and defendant had worked for him at times in said restaurant. The building in which the restaurant business was carried on changed hands and Frank was compelled to vacate. He was "broke and down and out." He told Kontos of his situation, and that he and Hallie would not be able to keep their home, whereupon defendant told them they might move into a vacant house owned by him and that he would live with them. They gave up their home and lived with Mrs. Harrety's parents until they moved into defendant's house in June, 1939. Defendant lived with them until August, 1943.

Defendant paid the moving expenses for plaintiffs, various household bills, a hospital bill, payments on a refrigerator, and advanced some cash, during the first six months they lived in his house. The total advanced and paid for plaintiffs amounted to about $256, which was repaid to defendant before this suit was brought. On June 22, 1939, Hallie bought a shoe repair shop, for the sum of $1510, which became and remained her property.

After plaintiffs gave up their home it was taken over by one Castelli, who had a furnace installed therein and who gave a note in payment thereof, said note being dated November 8, 1939. Frank signed said note as an accommodation to Castelli but Hallie did not sign same. Castelli also had the house papered and painted. On September 4, 1941, Frank and Hallie were sued for payment of paint and paper bills and the holder of the furnace note demanded payment of same from both Harretys. They became alarmed and discussed the matter with Kontos, telling him they feared being sued on the furnace note, which Hallie had not signed but which Frank had signed. Defendant advised that they execute a note and mortgage to him covering the shoe repair shop owned by Hallie, telling them that they could have it back at any time they wanted it. Plaintiffs agreed to do this and, on October 2, 1941, defendant procured a lawyer who prepared a note in the amount of $1600, and a mortgage covering the shoe shop, which plaintiffs signed, executed and delivered to defendant, and which mortgage was recorded. No money changed hands at the time the note and mortgage were executed and plaintiffs owed defendant only the $256 above mentioned. Plaintiffs stated that they took defendant's advice on this matter because he was their friend, had given them a home when they were down and out, and because they had complete confidence in him and in his judgment; that they took his advice as they would a father or brother. Thereafter, the furnace note was fully paid by Castelli. By the terms of the note given to defendant, which is the subject of this suit, it was to be paid in monthly installments of $25. At the time of suit no payment had been credited thereon, plaintiffs testified that none were made, and defendant said none were ever demanded. Frank testified that, in August, 1942, after the furnace note had been paid, he requested that defendant give him back the note and that defendant did so. In August, 1943, Hallie sold the shop and the Harretys bought a home, paying $100 on the purchase price. They told defendant they had bought a home and would move out of his house. He attempted to persuade them to stay and buy his house which they would not do. The purchaser of the shop demanded release of the mortgage and they requested defendant to release same. This he refused to do unless they paid him $1000 rent for occupancy of the house for four years. This suit followed.

Defendant testified to the effect that he had worked with and for Frank for many years; that he owned property, including real estate,

notes and cash of the value of more than $7000; that when the Harretys were "broke, down and out" in 1939, he invited them to live in his house and never, at any time, asked any rent; that he loaned them various sums in cash, and paid bills for them, of which he had a record in a book which was introduced in evidence. The entries in the book were of figures but there were no date entries. Defendant testified that $856.83 was loaned in 1939, $424 in 1940, and $320 in 1941. The amounts claimed to have been loaned totalled $1600.83. He testified to the effect that he did not ask plaintiffs what they wanted money for nor did he ask for any receipt or memorandum at any time he advanced money or paid accounts. He denied having surrendered the note to Frank, and denied that either of the Harretys had ever paid him any money on the note or book account. He also denied having had two certain conversations wherein he made statements to Frank Leonardo and to Louis Pinzino, in regard to this controversy, in August, 1943, shortly after this dispute arose.

Mrs. Pinzino, a sister-in-law of Mrs. Harrety, testified that she lived in the Harrety home during the last week of June, 1942, and that while living there she saw Hallie pay defendant some money, in his room; that Hallie asked Kontos if that was all she owed him and he answered "yes" and erased something in a little book.

Mrs. Mason, a former housekeeper in the Harrety home testified that she saw Frank give Kontos his vacation check from Armour's, where Frank was employed; that she saw him indorse and deliver the check to Kontos in the kitchen, during the first part of November, 1942; that during the latter part of November, 1942, she heard Frank tell Kontos he had some money for him and saw him hand him some money but did not know the amount; and that in December, 1942, Kontos told her that Frank had paid him for the coal and that he showed her his book and, according to the figures therein, Harrety still owed Kontos $156, and some odd cents.

Louis Pinzino, a brother of Hallie, testified that a few days after plaintiffs had received a letter from an attorney requiring release of the mortgage herein he went to talk with Kontos about the matter; that Kontos said: "Your brother-in-law Frank doesn't owe me a dime, ten cents, but I am going to collect on that mortgage."

Frank Leonardo, a foreman at Armour & Company for twenty years, testified that he discussed this matter with Kontos in an effort to amicably adjust the dispute, and that Kontos said: "I loaned Frank Harrety two hundred some odd dollars and he paid all that back." He stated in evidence that defendant claimed that Frank owed him $1000 rent for the house and he would release the mortgage only if that was paid; that witness suggested that Kontos ought to pay board if he demanded rent but that he refused to pay the Harretys anything for board and laundry. He also testified to the

effect that Kontos offered to release the mortgage if he, Leonardo, would give Kontos his personal note for $500 in settlement.

Defendant's testimony is flatly contradicted, not only by the testimony of plaintiffs, but also by that of the four witnesses above mentioned. We may, in an equity case, weigh the evidence; but we will, ordinarily, defer to the findings of the chancellor when same are based on conflicting evidence where credibility of witnesses is involved. [Smith v. Smith, 181 S. W. (2d) 793, l. c. 796.] In this case we agree with the findings of the chancellor to the effect that the note and chattel were given without consideration. We think the evidence discloses that plaintiffs did not owe defendant anything at the time the suit was filed.

However, defendant contends that equity can grant plaintiffs no relief because they have unclean hands. There are cases where the doctrine, that one who seeks equity must have clean hands and that a court of equity will not intervene where the parties stand *in pari delicto,* has its exceptions. [12 C. J. S. 1018 et seq.; Poston v. Balch, 69 Mo. 115, l. c. 121.] Such an exception is a case where one of the parties acts at the instance of the other in whom he has confidence and trust. In such a case the parties are not, in fact, *in pari delicto.* In the case at bar, according to the testimony of Mr. and Mrs. Harrety, they trusted defendant and acted at his instance and on his advice. Their testimony in this respect is corroborated by many facts and circumstances. We are inclined to believe their testimony and, apparently, the trial court also believed it.

Ordinarily equity will not aid persons to get relief from a situation resulting from the conveyance of their property in fraud of creditors. [9 C. J. 1221-1222; 12 C. J. S. 1018.] However, the rule has no application whatever to a situation where, although a conveyance was made with intent to defraud creditors, in fact, there were no creditors. [9 C. J. 1221-1222; 12 C. J. S. 1018.] According to all of the evidence in this case Mrs. Harrety had not signed the Holland Furnace Company note, on which suit had been threatened; and she so informed defendant. The note and mortgage were executed by her, according to plaintiff's evidence, in order to avoid payment of a claim which she, as owner of the property conveyed, did not owe. The situation here presented is similar to that discussed in Poston v. Balch, supra, l. c. 124. The rule contended for by defendant has no application to Mrs. Harrety. [Collins v. Schump, 16 N. M. 537, 120 Pac. 331, l. c. 332; Barnes v. Brown, 32 Mich. 146, l. c. 153.]

Mrs. Harrety cannot be deprived of her right of cancellation solely because her husband is a party plaintiff. The property is exclusively that of Mrs. Harrety, although Mr. Harrety is a necessary party to a proceeding seeking cancellation, he having joined in executing the mortgage (Davidson v. Gould, 187 S. W. 591, l. c. 592); yet he had no interest in the property and could properly have been joined as a

party defendant instead of a party plaintiff. Mrs. Harrety is entitled, on the record, to the relief sought; and that relief will not be denied on the sole ground that a joint plaintiff, instead of a defendant, may have owed debts when the mortgage was executed with intent to defraud creditors. Frank could not defraud his creditors by executing a mortgage on property to which he had no title. [Beane v. Givens, 51 Pac. 987, l. c. 989.]

Defendant contends that there is a fatal variance between plaintiffs' petition and their proof. No such assignment appears in his motion for new trial, nor is there any merit in the contention.

The judgment should be affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.