Robert W. NELSON, Plaintiff–
Respondent,

v.

John EMMERT and Pam Emmert,
Defendants–Appellants.

No. 25038.

Missouri Court of Appeals,
Southern District,
Division Two.

May 29, 2003.

Jeffrey W. Heil, Spencer, Scott & Dwyer, P.C., Joplin, for appellants.

Greg R. Bridges, Evenson & Carlin, L.L.C., Pineville, for respondent.

KENNETH W. SHRUM, Judge.

This is a case in equity that seeks to invoke the remedy of constructive trust. The trial court set aside a deed made by Robert W. Nelson ("Plaintiff") to John Emmert and his wife, Pam Emmert, and it ordered title to the land re-vested in Plaintiff.[1] Defendants' appeal claims that Plaintiff was not entitled to equitable relief as a matter of law because (1) he had unclean hands, and (2) the court never found Defendants promised to reconvey the real estate as Plaintiff contended. We affirm.

## CONSTRUCTIVE TRUST PRINCIPLES AND STANDARD OF REVIEW

■ Varied and confusing definitions of a constructive trust exist, as well as uncer-

---

1. When referring to John and Pam Emmert collectively, we call them "Defendants." When referring to them individually, we use their respective first names.

tainty regarding the constituent elements thereof. *Swon v. Huddleston,* 282 S.W.2d 18, 25 (Mo.1955); *Estate of Gulat,* 748 S.W.2d 79, 81 (Mo.App.1988). Although not technically a trust, a "constructive trust" is merely the machinery a court of equity uses as a remedy to right a past wrong. *March v. Gerstenschlager,* 436 S.W.2d 6, 8[2] (Mo.1969); *Lim v. Chong,* 66 S.W.3d 97, 100–01 (Mo.App.2001).

■ It has been stated that the constructive trust is the device used by chancery to force one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. *Wier v. Kansas City,* 356 Mo. 882, 204 S.W.2d 268, 270[1] (1947). It is a "method by which a court exercises its equitable powers to 'remedy a situation where a party has been wrongfully deprived of some right, title, benefit or interest in property as a result of fraud or in violation of confidence or faith reposed in another.'" *Fix v. Fix,* 847 S.W.2d 762, 765[4] (Mo. banc 1993) (quoting *Schultz v. Schultz,* 637 S.W.2d 1, 4 (Mo.banc 1982)).

In many typical cases, a court of equity uses the constructive trust remedy to restore to the plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him or her would result in a corresponding unjust enrichment of the defendant. *Suhre v. Busch,* 343 Mo. 679, 123 S.W.2d 8, 15–17[4] (1938); George Gleason Bogert & George Taylor Bogert, Bogert on Trusts § 471 (2d ed.1978); 1 Dan B. Dobbs, Law of Remedies, ch. 4 § 4.3(2) (2d ed.1993); 89 C.J.S. *Trusts* § 139 (1992); Restatement of Restitution § 160 at 640–45 (1937).

■ Constructive trusts must be proven by clear, cogent, and convincing evidence, and we will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Williams v. Walls,* 964 S.W.2d 839, 842[1, 4] (Mo.App.1998).

## FACTS

In January 1999, Plaintiff owned a 146–acre tract of real estate which he conveyed to Defendants, who were his friends. Plaintiff initially became acquainted with Pam when she worked for him in 1993 or 1994; Plaintiff first met John in 1995 when he began buying rock from Plaintiff's quarry.

In early 1999, Plaintiff was sued by T.J. Jeffries "on a lease for commercial quarry," and he later became involved in a dispute with a rival rock quarry company, Anchor Stone.[2] Faced with these problems, Plaintiff became concerned he might lose his real estate as a result of the litigation. Subsequently, when John suggested Plaintiff could deed the 146–acre tract to Defendants, Plaintiff agreed based upon the belief that the transfer was temporary in nature, i.e., Defendants would hold the land "in trust and confidence for him" and would reconvey the same to Plaintiff upon his request.

Following the conveyance, Plaintiff remained in possession of the land and made substantial improvements thereon. In June 2000, however, Defendants demanded Plaintiff vacate the premises which led to this suit wherein Plaintiff requested ownership and possession of the land be restored to him. After trial, the court made detailed findings of fact and conclusions of law, and it adjudged that the land be returned to Plaintiff. Defendants' appeal followed.

**2.** Jeffries owned the land where Plaintiff conducted his rock quarry business.

## DISCUSSION AND DECISION

*Sufficiency Of The Evidence To Support The Judgment?*

■ Defendants' second point charges the trial court committed reversible error when it granted Plaintiff relief "because the alleged fraud necessary to justify the constructive trust imposed by the court was absent, in that the court found no prior promise by [Defendants] to reconvey the real estate to [Plaintiff]." [3] Specifically, Defendants insist that the *only* "constructive trust" rule that will aid a grantor in cases where land is transferred with the expectation of having it reconveyed upon request (absent written agreement to support such expectation) is found in the Restatement of Restitution § 182 at 730.[4] *See, e.g., Rackley v. Rackley,* 922 S.W.2d 49, 51 (Mo.App.1996). Defendants claim that Plaintiff was required to prove fraud or misrepresentation via an *oral promise* made to him before the conveyance, relying upon comment (b) to § 182.

■ This court has grave reservations about the validity of Defendants' assertion that Plaintiff had to prove an oral agreement to reconvey before he could prevail.[5] We need not, however, fully address the history of constructive trust law in Missouri, nor attempt to resolve the many conflicts therein, nor decide if Plaintiff here could have prevailed without proof of an oral agreement to reconvey. This follows because the court found such an agreement was made.

In so stating, we acknowledge the trial court did not use Plaintiff's proffered finding that Defendants "promised" to reconvey the land. Moreover, Defendants are correct when they say the trial court deleted or altered many of Plaintiff's suggested

---

**3.** We discuss Defendants' second point at the outset for sake of clarity.

**4.** In pertinent part, the rule provides:

> "Where the owner of . . . land transfers it inter vivos to another upon oral trust in favor of the transferor or upon an oral agreement to reconvey the land to the transferor, and the trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the transferor, if
>
> (a) the transfer was procured by fraud, misrepresentation. . . ."

**5.** The argument ignores the fact that " '[t]here are numerous situations in which a constructive trust is imposed in the *absence of fraud.'* " *Estate of Bean v. Hazel,* 972 S.W.2d 290, 292 (Mo.banc 1998) (quoting William F. Fratcher, Scott on Trusts § 462 (4th ed.1989) (emphasis supplied)). Second, even if "fraud" is required to prove a constructive trust, the Restatement makes it clear that fraud need not be proven by an oral promise. "Fraud" is defined in the treatise as a misrepresentation, concealment, *or non-disclosure* (failure to reveal facts). Restatement of Restitution § 8 at

32. Moreover, the Restatement claims "[n]o attempt is made to cover every situation in which a constructive trust may arise." Restatement of Restitution § 160 cmt. (*l*) at 650. From this and other authorities, it is arguable that a failure by a transferor to prove a promise by the transferee to reconvey does not preclude the imposition of a constructive trust. Such a view comports with the idea that constructive trusts do not arise by agreement or intention of the parties, either actual or implied, but by operation of law, i.e., construction of the court. *Schultz,* 637 S.W.2d at 4; *Suhre,* 123 S.W.2d at 15[1]. It also comports with the definition of "fraud," as that term is used in equity, which can be less than proving a combination of an oral promise, its falsity, the promisor's intent to induce another to act, and reasonable reliance by the promisee. As explained in *Derby v. Donahoe,* 208 Mo. 684, 106 S.W. 632, 637 (1907):

> " 'Fraud in the contemplation of a court of equity may be said to include properly all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another; or by which an undue unconscientious advantage is taken of another.' " (Citation omitted.)

findings which bore on the issue of actual or legal fraud. Defendants' argument fails, however, because it ignores essential fact findings by the trial court (unchallenged by Defendants) that support the imposition of a constructive trust in favor of Plaintiff. In that regard, the court found Plaintiff did not gift the subject real estate to Defendants, but deeded it to them "to hold in trust and confidence for" Plaintiff. Next, the court found the "conveyance . . . by Plaintiff was made as a result of a trust or confidence in Defendants that Defendants would reconvey the property to Plaintiff upon Plaintiff's request." Moreover, the court stated Defendants *"knew at the time of the transfer . . . that such transfer was temporary and that Plaintiff . . . did not intend to convey the real estate in fee simple absolute."* (Emphasis supplied.) In a similar vein, the court found that "Defendants . . . *understood* that the transfer of the real property by Plaintiff . . . to them was temporary in nature." (Emphasis supplied.) Finally, the court determined that Plaintiff "relied on [the] belief that [Defendants] would reconvey said real estate" upon his request.

As noted, Defendants do not claim the above findings are unsupported by clear, cogent, and convincing evidence. Instead, they argue that because the court did not use the phrase proffered by Plaintiff, i.e., "promised to reconvey," then the trial court necessarily determined there was no "promise," and thus, it erred when it gave Plaintiff equitable relief. We disagree.

Although the trial court used somewhat informal language by referring to what each party knew, intended, and understood, the essence of what the court found was an agreement based upon a promise to reconvey. Defendants "understood" that the transfer was to be temporary.

The term "understood" is defined by WEBSTER'S NEW INTERNATIONAL DICTIONARY as "settled or settled upon by common agreement." (2d ed.1954). RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed.1998) defines "understood" as "agreed upon." *See also Commercial Lithographing Co. v. Family Media, Inc.,* 695 S.W.2d 936, 939 (Mo.App.1985) (holding "mutual understanding" is the equivalent of bilateral contract or "a promise for a promise"); BLACK'S LAW DICTIONARY (6th ed.1990) (defining an "understanding" in the law of contracts to mean "an agreement[,]" or "[a]n informal agreement or concurrence as to its terms"). The term is held to be synonymous with "agreement." 90 C.J.S. *Understand* at 1028–29 (1992). If Plaintiff intended the conveyance as temporary, i.e., he could get it back upon demand, and Defendants "knew" and "understood" such, then we cannot conceive how this came about except upon verbal discussions and promises or agreements. The evidence abundantly supports such a proposition. To accept Defendants' argument would do an injustice to the English language.

When the judgment is read in light of the evidence presented at trial, it is clear that the court determined that Defendants promised to reconvey the land to Plaintiff upon his demand. Plaintiff entered into the agreement based upon this belief. Defendants have not challenged any other findings; consequently, their argument, that the "oral agreement" requirement of § 182 of the RESTATEMENT OF RESTITUTION was unfulfilled, is without merit. Point denied.

### Point I: Unclean Hands Defense

In Point I, Defendants allege the trial court committed reversible error when it failed to apply the equitable doctrine of unclean hands. Defendants claim that Plaintiff transferred the subject prop-

erty in order to "defraud creditors." Consequently, they argue Plaintiff's misconduct precluded the trial court from awarding him a constructive trust.

 "Courts of equity are chary of reaching out a helping hand to those litigants who voluntarily put themselves in the predicament of this plaintiff by a voluntary conveyance of land to hinder, delay, or defraud creditors." *Chambers v. Chambers,* 227 Mo. 262, 127 S.W. 86, 93 (1910). Stated another way, the doctrine of unclean hands requires that a party coming into a court of equity must have acted in good faith as to the subject matter of the lawsuit. *Crawford v. Detring,* 965 S.W.2d 188, 193 (Mo.App.1998). The doctrine is not one of absolutes, however, but can be utilized in the discretion of a court of equity. *Colbert v. Nichols,* 935 S.W.2d 730, 734 (Mo.App.1996); 30 C.J.S. *Equity* §§ 111, 114 (1992); HENRY L. McCLINTOCK, PRINCIPLES OF EQUITY § 26 (2d ed.1948). The doctrine " 'does not apply to every unconscientious act or inequitable conduct on the part of a plaintiff.' " *Price v. Ridler,* 373 S.W.2d 59, 62 (Mo.1963) (quoting 2 POMEROY'S EQUITY JURISPRUDENCE § 399 at 94 (5th ed)).

 As such, the doctrine should be applied when it promotes right and justice by considering all of the facts and circumstances of a particular case. *Durwood v. Dubinsky,* 361 S.W.2d 779, 791 (Mo.1962); *Colbert,* 935 S.W.2d at 734; 30A C.J.S. § 111. In some instances, the "hoary and murky doctrine" of unclean hands was held inapplicable when the alleged misconduct did not injure the party defendants. *Osterberger v. Hites Const. Co.,* 599 S.W.2d 221, 229[19] (Mo.App.1980); *see also Price,* 373 S.W.2d at 62 (holding "wrong must have been done to the defendant himself and not to some third party"); *Simcox v. Obertz,* 791 S.W.2d 440, 443 (Mo.App.1990) (holding doctrine inapplicable where al-

leged misconduct did not affect defendants). In other instances, the doctrine was not invoked in the presence of exceptional circumstances because to do so would work an injustice and a wrong. *Smith v. Holdoway Const. Co.,* 344 Mo. 862, 129 S.W.2d 894, 902 (1939).

Here, the Defendants claim that the trial court abused its discretion by failing to invoke the doctrine when Plaintiff testified that he transferred the property because he "didn't want to lose it." Apparently, Plaintiff feared liability arising from lawsuits with Anchor Stone and T.J. Jeffries. Although Plaintiff's conduct is not to be condoned, we hold the trial court did not abuse its discretion when it implicitly found the doctrine of unclean hands inapplicable. This follows for a number of reasons.

 First, although Plaintiff testified he transferred the land to avoid losing it, he also testified that he had enough additional assets to cover any potential judgment against him. Moreover, the Jeffries lawsuit was settled within three months of the transfer, and it appears no harm has resulted to that potential creditor *vis-a-vis* the transfer. Apparently, although the time is unclear, problems began to arise between Anchor Stone and Plaintiff in August 1999 (seven months after the transfer). Anchor Stone's attorney contacted Plaintiff's lawyer (Joe Johnson) regarding a potential suit against Plaintiff, and Johnson spoke with Plaintiff in December 1999 (eleven months after the transfer) about the problems. There has been no showing that Anchor Stone was harmed by Plaintiff's misconduct. When no actual harm has come to potential creditors, the trial court is within its discretion to deny the application of the unclean hands doctrine. See, e.g., Simcox, 791 S.W.2d at 443; McClure v. Wilson, 238 Mo.App. 824, 185 S.W.2d 878, 883 (1945); Harrety v. Kontos,

238 Mo.App. 519, 184 S.W.2d 195, 197–98 (1944); 30A C.J.S. §§ 111–113.

 Second, Defendants' complicity should foreclose the defense of unclean hands. John suggested that Plaintiff transfer ownership of the land. At the time, both agreed the transfer would be temporary, i.e., Plaintiff could have it back upon demand. Defendants not only aided Plaintiff in attempting to defraud potential creditors, but committed a second fraud upon Plaintiff by inducing him to convey the property even though they did not intend the transfer to be temporary. The unclean hands doctrine will not aid wrongdoers who attempt to use it as a shield for their own misconduct, nor will it promote an unconscionable gain at a plaintiff's expense. 30A C.J.S. §§ 111 and 114. The doctrine is not for the benefit of a defendant whose hands are also unclean. *Smith,* 129 S.W.2d at 902.

 Finally, Defendants are not harmed by vesting title in Plaintiff. Defendants paid nothing for land valued at $146,000. Plaintiff made approximately $600,000 worth of improvements upon the property. When a party fails to show he or she has been injured by the inequitable conduct, the trial court does not abuse its discretion by failing to invoke the unclean hands doctrine. *Price,* 373 S.W.2d at 62; *Osterberger,* 599 S.W.2d at 229[19]. Moreover, Plaintiff would suffer an unconscionable injustice and wrong if Defendants were allowed to benefit from their own inequitable conduct. A court of equity should not invoke the doctrine if doing so creates a greater wrong than that alleged to have been committed by the plaintiff. *Smith,* 129 S.W.2d at 902.

Considering the entirety of the circumstances, the trial court did not abuse its discretion when it denied the defense of unclean hands. Although this court chastises Plaintiff for his conduct, the equity court recognized that neither creditors, nor Defendants had been harmed by his misdeeds. Likewise, the court recognized that Defendants' hands were unclean, and to allow them to benefit from their own fraudulent conduct would impose a substantial injustice and inequity upon Plaintiff. Point denied.

The judgment of the trial court is affirmed.

PREWITT, P.J., and RAHMEYER, C.J., concur.