SANGAMON ASSOCIATES, LTD.,
et al., Appellants,

v.

The CARPENTER 1985 FAMILY
PARTNERSHIP, LTD., et
al., Respondents.

No. SC 86476.

Supreme Court of Missouri,
En Banc.

May 31, 2005.

As Modified on Denial of Rehearing
July 12, 2005.

Frederick H. Riesmeyer, II, William P. Denning, Kansas City, MO, for Appellants.

Rhonda E. Smiley, Kansas City, MO, W. Edward Reeves, Caruthersville, MO, for Respondents.

MARY R. RUSSELL, Judge.

Two partners in a real estate venture fell into disagreement resulting in a court-ordered partition sale of their jointly-held property. The only bid at the public sale was made by one of the partners. The trial court, finding the bid to be grossly inadequate, set aside the sale and encouraged the partners to settle. Over two years after the public sale, the bidding partner offered to increase his bid, and over the objection of the non-bidding partner, the trial court confirmed the public sale and increased the sale price to the proposed amount without conducting another public sale.

The non-bidding partner argues that the trial court erred in entering the final judgment of partition of the property in that it did not follow the statutory requirements for partition sales. After opinion by the Court of Appeals, Western District, this Court granted transfer. Mo. Const. art. V, sec. 10. This Court reverses the judgment on the partition claim, affirms the judgment in all other respects, and remands the case.

## I. Facts

The late Allan R. Carpenter ("Carpenter") and Dale E. Fredericks ("Sangamon")[1] formed Broadway–Washington Associates ("BWA"), a limited partnership, in 1985 to acquire, own, and develop real estate in downtown Kansas City. The parcel that is the subject of this case was a surface parking lot jointly owned by the partners, with Carpenter having a 90% interest and Sangamon having a 10% interest.

Disputes arose between the partners, and Sangamon filed a twenty-two count petition that included direct and derivative claims for appointment of a receiver, breach of fiduciary duty, conversion, and constructive trust. The petition named Carpenter and other partnerships and entities involved with the BWA property as defendants. In response Carpenter raised two counterclaims, including a request for partition of the jointly-owned property.

The parties agreed that the property should be partitioned by sale, rather than partitioned in kind. As a result, the trial court entered an interlocutory order of partition and order of sale ordering a public sale pursuant to Rule 96. At the sale, Carpenter was the only bidder, bidding $3.04 per square foot. Sangamon subsequently filed a motion to have the sale set aside because of "gross inadequacy of price" because it claimed the property was worth approximately $100 per square foot.

The trial court set aside its interlocutory order of partition and sale in January 2000, finding that "the sale price at the . . . partition sale on the courthouse steps [was] so grossly inadequate as to 'shock the conscience of the Court, raise a presumption of fraud, and amount to a sacrifice,' such that the sale must be set aside and not confirmed." It ordered a partition in kind of the property because "the dynamics concerning a judicial sale [had] so changed since initially ordered."

However, before the trial court confirmed the partition in kind and entered a

1. There are numerous parties and business entities involved in this litigation. A detailed explanation of their relationships is not relevant to the disposition of this case. For purposes of simplicity, Allan R. Carpenter and his business entities will be referred to as "Carpenter," and Dale E. Fredericks and his business entities will be referred to as "Sangamon."

final order, it encouraged the parties to settle. During a settlement-oriented status conference held over two years after the public sale, Carpenter offered to increase its bid from the public sale to $32 per square foot, almost 10 times its original bid amount. The trial court ultimately entered a final judgment and order of sale, setting aside the interlocutory order for partition in kind and reinstating the original order for partition by sale. In doing so, it also accepted Carpenter's increased bid of $32 per square foot and confirmed the public sale over Sangamon's objection. The trial court provided no legal or factual basis for this action. When the trial court entered a final judgment on the partition claim, it entered a final judgment in favor of Carpenter on the claims for appointment of a receiver, breach of fiduciary duty, conversion, and constructive trust, which Sangamon now appeals.[2]

## II. Standard of Review

"[T]he decree or judgment of the trial court will be sustained ... unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). A judgment should be reversed as being against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. *Id.*

## III. Partition Action

Sangamon argues that the trial court erred in entering the final judgment of partition of the jointly-owned property because it failed to follow the procedures established in Rule 96 and chapter 528, RSMo 2000,[3] for conducting a partition

sale. Sangamon also argues that Carpenter is barred from receiving the equitable remedy of partition because of the doctrine of unclean hands in that Carpenter engaged in wrongful conduct and self-dealing with respect to this property.

### A. Non–Compliance with Statutory Requirements

Sangamon contends that in entering a final judgment on the partition claim and accepting Carpenter's increased bid from the settlement conference the trial court conducted what amounted to a "private sale" in violation of Rule 96 and chapter 528.

An owner of property held in tenancy in common may bring an action for partition of the jointly-owned property. Sec. 528.030; Rule 96.01. Partition sales are strictly statutory and "may be effected only in accordance with the procedures set forth in Rule 96 and Chapter 528." *Darrington v. George*, 982 S.W.2d 823, 825 (Mo.App.1998). Section 528.590 requires that all property subject to partition sale be sold by a court-appointed commissioner or by a sheriff at a public auction on the courthouse steps.

After a public sale is conducted, the confirmation or rejection of the sale is within the sound discretion of the trial court. *Borchers v. Borchers*, 352 Mo. 601, 179 S.W.2d 8, 12 (1944). This decision will not be disturbed on appeal unless there is a manifest abuse of discretion. *DiLeo v. Hunter*, 505 S.W.2d 112, 114 (Mo.App. 1974). Inadequacy of price alone is not a sufficient ground for refusing to confirm a public sale, unless the inadequacy is "so gross as to raise the presumption of fraud." *Borchers*, 179 S.W.2d at 12. A

---

**2.** The judgment on the remaining partnership claims is not being appealed.

**3.** All references are to RSMo 2000 unless otherwise indicated.

sale can also be set aside if the price amounts to a "sacrifice." *Koester v. Koester*, 543 S.W.2d 51, 55 (Mo.App.1976).

█ The trial court correctly set aside the partition sale because the price of $3.04 per square foot was so grossly inadequate as to "raise the presumption of fraud" and amounted to a "sacrifice." Carpenter had listed the property for sale with a broker for the price of $100 per square foot. The bid of $3.04 per square foot was also well below the prevailing market values for similar property in downtown Kansas City. Prior to the partition action, Carpenter had rejected bids in the amounts of $34 and $42 per square foot, describing them as "low ball offers" and stating that he did not believe that those buyers were genuinely interested in purchasing the property. He testified that a reasonable offer would be "something in excess" of $47 per square foot. The evidence demonstrates that the trial court did not abuse its discretion in setting aside the public sale.

█ After the trial court set aside the sale, it should have ordered a new public sale. Instead, the trial court accepted the bid of $32 per square foot proposed by Carpenter and entered a final judgment on the partition claim. The statutory requirements do not give the trial court the authority to amend the price for property sold by a public partition sale after the sale is held. *See* secs. 528.010 to 528.640; Rule 96. The price for such property can only be amended through a new public sale. By "accepting" Carpenter's bid of $32 per square foot two years after the original sale without conducting a public sale, the trial court essentially conducted a private sale of the property.

Carpenter argues that the $32 per square foot price was an amended bid for the $3.04 bid at the public sale. By allowing the bid to be privately amended two years after the public sale, the public sale became a subterfuge for the private sale. This is directly contrary to the requirements of Rule 96 and chapter 528, which state that property partitioned should be sold at a public sale. Because the property here was sold by what amounted to a private sale, the trial court erred in amending the sale price.

This Court reverses the judgment on the partition claim affirming the public sale for the modified amount of $32 per square foot, in that the trial court erroneously applied the law governing partition actions. The deed in partition is set aside, and this case is remanded for further proceedings in accordance with the requirements of Rule 96 and chapter 528 and this Court's opinion.

**B. Unclean Hands Defense**

█ Sangamon argues that Carpenter is not entitled to the equitable remedy of partition because the defense of unclean hands applies and Carpenter acted wrongfully with respect to the property. Sangamon alleges that Carpenter refused to pursue opportunities to sell the property and then benefited from his wrongful actions "by purchasing the land through partition at a price so low it shocked the Trial Court's conscience."

█ Partition is an equitable remedy. Sec. 528.010. The doctrine of unclean hands is a defense that bars one who has acted wrongfully with respect to the subject of the suit from obtaining an equitable remedy. *Karpierz v. Easley*, 68 S.W.3d 565, 572 (Mo.App.2002). This doctrine should be applied when it promotes right and justice by considering all of the facts and circumstances of a particular case. *Durwood v. Dubinsky*, 361 S.W.2d 779, 791 (Mo.1962). Further, courts have stated that the doctrine of unclean hands is "not

one of absolutes" and can be used "in the discretion of a court of equity." *Nelson v. Emmert,* 105 S.W.3d 563, 568 (Mo.App. 2003).

This Court agrees with the trial court's finding that there was insufficient evidence of unclean hands.

## IV. Appointment of a Receiver

■ Sangamon argues that the trial court's denial of its request for the appointment of a receiver was against the weight of the evidence. It argues that this Court should appoint a receiver pursuant to Rule 68.02 to sell the property because a receiver is necessary to protect the jointly-owned property. Sangamon alleges that Carpenter engaged in several instances of misconduct while acting as managing partner, including "engaging in extensive self-dealing, excluding other general partners from partnership affairs, failing to disclose material partnership information, and secretly suing his own partnership to recover monies which were the subject of this underlying litigation."

■ Rule 68.02(a) states:

Whenever in a pending legal or equitable proceeding it appears to the court that a receiver is necessary to keep, preserve and protect any business, business interest or property ... the court may appoint a receiver whose duty it shall be to keep, preserve and protect ... that which the receiver is ordered to take into the receiver's charge.

"[A]bsent threatened destruction or dissipation of the property, or where there is no good cause to believe that benefit would result from the appointment of a receiver, then the court should decline to make such an appointment." *Lynch v. Lynch,* 277 S.W.2d 692, 694 (Mo.App.1955) (emphasis omitted). The power to appoint a receiver is within the sound discretion of the trial court, and "[a] receiver should be appointed only when the court is satisfied that the appointment will promote the interests of one or both parties, that it will prevent manifest wrong, imminently impending, and that the injury resulting will not be greater than the injury sought to be averted." *Id.* (emphasis omitted).

Sangamon does not state a sufficient basis to justify the appointment of a receiver. The record does not reflect that the appointment of a receiver was necessary, and the trial court exercised its discretion in denying the request for the appointment. This Court affirms the trial court's denial of Sangamon's request to appoint a receiver.

## V. Partnership Claims

■ Sangamon argues that the trial court erred in entering judgment in favor of Carpenter on the claims for breach of fiduciary duty, conversion, and constructive trust because its judgment was against the weight of the evidence. Sangamon claims that the evidence established that Carpenter "engaged in extensive self-dealing, excluded [Sangamon] from partnership affairs, refused to pay monies due to [Sangamon] and refused to cooperate in attempts to sell the property."

This Court finds that there was sufficient evidence upon which the trial court could find for Carpenter on these claims. This Court affirms the judgment of the trial court for Carpenter on the claims for breach of fiduciary duty, conversion, and constructive trust.

## VI. Conclusion

The trial court's judgment is affirmed in part and reversed in part, and the case is remanded.

WHITE, C.J., WOLFF, PRICE, TEITELMAN and LIMBAUGH, JJ., and CALVIN, Sp.J., concur.

STITH, J., not participating.