PONY EXPRESS COMMUNITY BANK, Plaintiff,

James W. Burkeybile, Respondent,

v.

Larry CAMPBELL, Wanda K. Campbell, Brian Campbell, Dana Campbell, Appellants.

No. WD 66042.

Missouri Court of Appeals, Western District.

Nov. 28, 2006.

Charles Gregg Larson, St. Joseph, for Appellant.

John Francis Burns, St. Joseph, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

This appeal arises from a judgment on a third party petition for equitable contribution by one of the co-signors of a promissory note in favor of Pony Express Community Bank against the other co-signors of that note. The trial court entered judgment in favor of James Burkeybile for damages representing the proportionate share of the other co-signors' liability on the note that had been paid by Burkeybile. Larry, Wanda, Brian, and Dana Campbell (the Campbells) appeal the court's judgment contending that Burkeybile had "unclean hands" and, therefore, was not entitled to the equitable relief of contribution.

We affirm.

## Factual and Procedural Background

Larry and Brian Campbell, along with Burkeybile, are the principals of Northwest Commercial Park, Inc. (Northwest), a corporation engaged in the business of developing real estate. In order to finance the development of a parcel of land in northern Buchanan County, Northwest negotiated a line of credit with Pony Express Community Bank and executed a series of promissory notes beginning in August of 2000. These notes were secured by contemporaneous personal guarantees signed by the corporation's three principals and their wives. The principals, as guarantors, were also required by the bank to submit annual financial statements to the bank. At some point in early 2002, Burkeybile ceased providing these annual financial statements to the bank.

The final promissory note related to the loan was executed in May of 2003, and matured in January of 2004. The terms of that note required monthly payments of $4,500, and these payments were initially made by way of funds drawn on the corporation's account. Sometime prior to the maturation of the note, the corporate assets were no longer sufficient to maintain the note, and the three principals began making monthly payments in the amount of $1,500 each. Beginning in January of 2004, however, regular payments on the note ceased. From that point on, each of the principals made payments in various amounts, never exceeding $1,500, and the bank apparently viewed the note as being in default.

The bank then exercised a right of set-off against an account that Burkeybile had pledged against the loan, recovering $50,000. The bank also foreclosed on two parcels of land owned by the corporation, recovering $80,000. The bank subsequently collected $11,000 each from Larry and Brian Campbell in exchange for releasing their obligations to the bank, and filed a petition to collect the balance on the note from Burkeybile who then filed a third party action against the appellants seeking equitable contribution because he had paid more than his prorata share of the note obligation. That petition resulted in a judgment against Burkeybile in favor of the bank in the amount of $16,938.

After a hearing at which evidence relevant to Burkeybile's third party petition for contribution was presented, the trial court found that, in order to satisfy the three principals' obligations to the bank, Burkeybile had contributed $68,408.28, Larry Campbell had contributed $13,715.53, and Brian Campbell had contributed $12,215.53. The court entered a judgment on the third party petition in favor of Burkeybile, in amounts calculated to equalize the payments between the three guarantors.

In their sole point on appeal, the Campbells maintain that the trial court erred in granting relief to Burkeybile because the equitable doctrine of unclean hands should have barred recovery.[1] At trial and on appeal the Campbells assert that Burkeybile's refusal to provide the bank with a financial statement was the cause of the bank's refusal to renew the note in January 2004 and subsequent declaration of default. They contend that Burkeybile's refusal to provide the financial statement constituted misconduct of the sort contemplated by the unclean hands doctrine. Because of this misconduct, they claim he was not entitled to contribution from them.

Apparently in response to the trial court's conclusion that "there is plenty of blame to go around for all the principals" regarding the loan default, the Campbells further assert that no evidence of misconduct on their part was offered at trial. Because the trial court correctly applied the unclean hands doctrine, the judgment is affirmed. To the extent that the Campbells' brief raises an issue of the sufficiency of the evidence, this court has examined that evidence, and finds it adequate to support the judgment of the trial court.[2]

## Standard of Review

▇▇▇ In a bench-tried equitable action, this court's review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court must therefore be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* at 32. This court conducts an independent review of the trial court's conclusions of law and reaches its own conclusions about the application of the law to the facts of a specific case. *Dial v. Lathrop R–II School Dist.*, 871 S.W.2d 444, 446 (Mo. banc 1994). To the extent that the Campbells raise an issue of the sufficiency of the evidence adduced at trial, however, this court reviews that evidence giving "due regard to the opportunity of the trial court to have judged the credibility of witnesses." Rule 84.13(d).

## Discussion

▇▇▇ The Campbells' primary legal contention revolves around the assertion that

---

1. The Campbells' point relied on is not in technical compliance with Rule 84.04(d) because it fails to "state concisely the legal reasons for appellant's claim of reversible error" and "why, in the context of the case, those legal reasons support the claim of reversible error." Nonetheless, it seems that opposing counsel has successfully identified and replied to the issues raised on appeal, and the deficiencies do not "impede disposition of the case on its merits." *Jerman v. Jerman*, 135 S.W.3d 536, 537 (Mo.App. S.D. 2004). Since the primary deficiency in the Campbells' point seems to consist of a rather transparent attempt to manipulate the standard of review on appeal, the actual thrust of the argument presented is readily discernible, and a dismissal for noncompliance with Rule 84.04 is not warranted. *Cf. Gen. Plywood Corp. v. S.R. Brunn Const. Co.*, 511 S.W.2d 905, 907 (Mo.App. W.D.1974).

2. The Campbells also suggest, in the argument section of their brief, that the trial court erred in "failing to weigh the equities against each individual [third party] defendant," because Wanda and Dana Campbell are connected to the transactions at issue only as cosignors on the surety agreements, whereas Larry and Brian Campbell, as principals in the corporate entity, had much more substantial involvement with the debt. This general argument is also restated in the Campbells' reply brief, but is not raised in the Campbells' point relied on. Therefore, this claim of error has not been preserved for review by this court. *See Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978) (describing perils inherent in allowing appellate courts to search the argument portion of a brief to determine "the nature of the contentions asserted").

the equitable defense of unclean hands should have barred a recovery on Burkeybile's claim for contribution. In the judgment entered on that claim, the trial court concluded that, in addition to Burkeybile, Larry and Brian Campbell were responsible for non-performance of the terms of the promissory note. It appears that this was the basis of the trial court denying the Campbells the benefit of the equitable defense.[3] Thus, in order to find that the trial court committed error *as a matter of law,* this court would have to find that the equitable defense bars any recovery regardless of the wrongdoing of the party asserting the defense. This claim, however, has been succinctly refuted by our Supreme Court in *Smith v. Holdoway Construction Co.,* 344 Mo. 862, 129 S.W.2d 894 (1939), where it was noted that " 'the refusal by a court of equity of relief to those who come with unclean hands is not for the benefit of those whose hands also are unclean.' " *Id.* at 902 (citation omitted). Thus, the unclean hands defense "will not aid wrongdoers who attempt to use it as a shield for their own misconduct." *Nelson v. Emmert,* 105 S.W.3d 563, 569 (Mo.App. S.D.2003).

The unclean hands defense is grounded upon the maxim that "[h]e who comes into equity must come with clean hands." 30A C.J.S. Equity Section 102 (1992). This maxim is not intended to benefit the defendant who invokes its protection, but to serve the interests of public policy and protect the integrity of the courts. *Id.* Thus, in order to accomplish the policy goals underlying the maxim, Missouri courts have relaxed the general rule such that, " '[e]ven when the parties have been

found to be in pari delicto, relief has at times been awarded on the ground that in the particular case public policy has been found to be best conserved by that course.' " *Smith,* 129 S.W.2d at 902 (citation omitted).

It has been observed that "the doctrine of unclean hands is 'not one of absolutes' and can be used 'in the discretion of a court of equity.' " *Sangamon Assoc. Ltd. v. Carpenter 1985 Family P'ship Ltd.,* 165 S.W.3d 141, 145–46 (Mo. banc 2005) (quoting *Nelson,* 105 S.W.3d at 568). The doctrine should thus be "applied when it promotes right and justice by considering all of the facts and circumstances of a particular case." *Id.* at 145.

In the present case, the trial court appropriately considered all of the facts and circumstances surrounding the disputed debt, including the conduct of Burkeybile and the Campbells in relation to the defaulted loan. The trial court characterized the Campbells' claim that Burkeybile was solely at fault for the default as "unpersuasive," and concluded that there was "plenty of blame to go around" for the default. These conclusions were supported by evidence in the record that regular payments on the note ceased in January of 2004. At trial, Burkeybile offered the testimony of Dan Means, a vice president at the bank. That testimony established that payments, as required by the note, were made through the end of 2003, but that in January of 2004, only $1,500 was received. Burkeybile made that payment, and neither of the Campbells made any payment in January. Over the course of the next six months, the Campbells made a series

---

**3.** The trial court noted that:

The position taken by LARRY and BRIAN that all losses sustained by NORTHWEST were as a result of BURKEYBILE's unilateral actions or inactions are unpersuasive. The suggestion that BURKEYBILE is not

entitled to recovery as he comes into equity with "unclean hands" can be observed to apply similarly to LARRY and BRIAN. It is clear that there is plenty of blame to go around for all the principals for the non-performance upon the NOTE.

of payments, in various amounts, totaling $4,031.

On cross-examination, Means was asked upon what basis the bank decided not to renew the note in January of 2004, to which question he replied, "[w]e had requested the financial information from Walt Burkeybile and had not received it." Means did not testify, as the Campbells suggest to this court, that Burkeybile's failure to provide the financial statement was the sole reason for not renewing the loan. However, even if the testimony had been as the Campbells now characterize it, this court would not reverse the judgment of the trial court.

■ Burkeybile's principal duty regarding the note in question was the same as that of the Campbells: to pay the balance due. None of the parties involved was under any duty to seek renewal of the loan. Thus, even if Burkeybile's failure to provide financial statements was "misconduct" to the extent that such statements were required under the note, it was not misconduct of the sort required for application of the unclean hands doctrine to Burkeybile's claim for contribution. In considering application of that doctrine, Missouri courts have consistently recognized that " '[w]hat is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts.' " *Karpierz v. Easley*, 68 S.W.3d 565, 572 (Mo.App. W.D.2002) (citation omitted). The right to contribution asserted by Burkeybile in the present suit does not derive from the bank's decision not to renew the loan by way of another promissory note. Rather, it arises directly out of the fact that he has paid a disproportionate share of his obligation under the last note executed and discharged liability of the Campbell's on the note.

That Burkeybile and the Campbells were equal co-obligors on the bank loan at issue was uncontradicted at trial. Similarly, all parties agree that Burkeybile has paid a disproportionate share of the debt owed to the bank. In its findings of fact, the trial court determined that, of the $94,339.34 expended to retire the debt and pay expenses of interest, attorney fees and costs, Burkeybile contributed $68,408.28. The Campbells do not challenge these findings on appeal.

Under the facts and circumstances of the present case, it cannot be said that application of the doctrine of unclean hands would promote right and justice. The judgment of the trial court is, accordingly, affirmed.

EDWIN H. SMITH, Judge, and LISA WHITE HARDWICK, Judge, concur.